# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MH EQUITY MANAGING MEMBER, LLC, | ) | Case No. 13-06283-JKC-11 |
| | ) | |
| | ) | Hon. James K. Coachys |
| Debtor. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF
## MERCHANT CAPITAL, LLC AND MENARD, INC.'S
## MOTION TO DISMISS THE DEBTOR'S CHAPTER 11 CASE

Dated:  August 21, 2013   Respectfully Submitted,

            __ /s/ Michael D. Freeborn__

            Michael D. Freeborn
            FREEBORN & PETERS LLP
            311 South Wacker Drive, Suite 3000
            Chicago, Illinois 60606-6677
            Telephone: 312.360.6000
            Facsimile: 312.360.6995
            E-mail: mfreeborn@freeborn.com

            *Counsel for Merchant Capital, LLC and Menard, Inc.*

## TABLE OF CONTENTS

FACTS ......................................................................................................................1

    A.     The Wisconsin State Court Action ........................................................1

          1.     The Merchant Creditors File a Complaint Alleging Breach of Contract And Breach of Duty Against the Debtor, Hilbert, and Others ........................................................................................2

          2.     The Circuit Court Grants Merchant Capital's Motion for an Injunction to Enforce its June 2012 Removal of the Debtor as Fund Manager and Hilbert as President and CEO ..................................3

          3.     The Circuit Court and Wisconsin Appellate Court Reject the Debtor's Post-Injunction Motions ................................................4

          4.     Merchant Capital Discovers the Debtor's Post-Removal Diversion of Fund Assets and Seeks Discovery From Stephen and Tomisue Hilbert and Others To Whom Assets May Have Been Diverted ...............5

    B.     The Debtor's Chapter 11 Case ............................................................7

          1.     On the Eve of the June 13, 2013 Hearing, the Debtor Files for Chapter 11 Protection Staying the State Court Action and Stopping Proceedings on the Subpoenas ....................................................7

          2.     The Debtor Promptly Removes the State Court Action and Seeks *Immediate* Transfer to This Court ..............................................7

          3.     The Debtor's Representatives Admit That Forum Shopping Is the Reason For the Chapter 11 Case ...................................................8

ARGUMENT ...........................................................................................................10

I.     THIS COURT HAS THE POWER TO DISMISS A CASE FILED IN BAD FAITH ..............................................................................................................11

II.    THE DEBTOR'S CHAPTER 11 CASE IS A BAD FAITH FILING AND SHOULD BE DISMISSED ....................................................................................12

    A.     The Chapter 11 Case is an Exercise in Forum Shopping, Designed to Create The Automatic Stay (Factor 13) And Resolve The Debtor's Two-Party Dispute With Merchant Capital (Factor 11) ................................13

    B.     Other Factors Favor Dismissal As Well ..............................................15

    1.      The Debtor Has Few or No Unsecured Creditors (Factor 1) and Few Debts to Non-Moving Creditors (Factor 5).........................................15

    2.      The Debtor Engaged In Improper Pre-Petition Conduct (Factor 3) ..........16

    3.      The Debtor Has No Ongoing Business or Employees (Factor 8) and The Debtor's Income Is Insufficient to Operate (Factor 10)...............16

    4.      There Is No Possibility of Reorganization (Factor 9)...............................16

CONCLUSION.................................................................................................................17

## TABLE OF AUTHORITIES

CASES                                                                                           PAGE(S)

*In re 4 C Solutions, Inc.*,
    289 B.R. 354 (Bankr. C.D. Ill. 2003)..............................................................12, 16

*In re Argus Group 1700, Inc.*,
    206 B.R. 737 (E.D. Pa. 1996) ....................................................................13, 14

*In re Castleton Associates Ltd. P'ship*,
    109 B.R. 347 (Bankr. S.D. Ind. 1989) ............................................................16

*In re Cedar Shore Resort, Inc.*,
    235 F.3d 375 (8th Cir. 2000) ........................................................................12

*In re Crown Financial, Ltd.*,
    183 B.R. 719 (Bankr. M.D.N.C. 1995)............................................................15

*In re Edwards*,
    1996 WL 407253 (Bankr. E.D. Pa. June 17, 1996) .............................................17

*In re Grieshop*,
    63 B.R. 657 (N.D. Ind. 1986) ......................................................................11

*In re HBA East, Inc.*,
    87 B.R. 248 (Bankr. E.D.N.Y. 1988)..............................................................15

*In re Heritage Wood 'N Lakes Estates, Inc.*,
    73 B.R. 511 (Bankr. M.D. Fla. 1987) .............................................................14

*In re Jartran, Inc.*,
    886 F.2d 859 (7th Cir. 1989) .......................................................................11

*In re MELP, Ltd.*,
    143 B.R. 890 (Bankr. E.D. Mo. 1992)............................................................14

*In re MGN Co., III*,
    116 B.R. 654 (Bankr. S.D. Ind. 1989) .........................................................11, 12

*In re Monsour Medical Center, Inc.*,
    154 B.R. 201 (Bankr. W.D. Pa. 1993) .........................................................13, 15

*In re Original IFPC Shareholders, Inc.*,
    317 B.R. 738 (Bankr. N.D. Ill. 2004) .........................................................11, 14

*In re Premier Automotive Services, Inc.*,
　　492 F.3d 274 (4th Cir. 2007) ........................................................................17

*In re Schultz*,
　　436 B.R. 170 (Bankr. M.D. Fla. 2010) ..........................................................15

*In re St. Paul Self Storage Ltd. P'ship*,
　　185 B.R. 580 (9th Cir. B.A.P. 1995).............................................................15

*In re Trident Associates Ltd. P'ship*,
　　52 F.3d 127 (6th Cir. 1995) ..........................................................................16

*In re Wally Findlay Galleries (New York), Inc.*,
　　36 B.R. 849 (Bankr. S.D.N.Y. 1984) ............................................................13

*In re Walter*,
　　108 B.R. 244 (Bankr. C.D. Cal. 1989)...........................................................13

*In re Y.J. Sons & Co., Inc.*,
　　212 B.R. 793 (D. N.J. 1997) ..........................................................................13

*Matter of Willows of Coventry, Ltd. P'ship*,
　　154 B.R. 959 (Bankr. N.D. Ind. 1993)...........................................................12

*Matter of Woodbrook Associates*,
　　19 F.3d 312 (7th Cir.1994) ...........................................................................11

## STATUTES

11 U.S.C. § 1112(b) ..............................................................................1, 11, 17

11 U.S.C. § 1112(b)(1) ...................................................................................11

11 U.S.C. § 1112(b)(4) ...................................................................................11

28 U.S.C. § 1334 ..............................................................................................8

28 U.S.C. § 1412 ..............................................................................................8

28 U.S.C. § 1452(a) .........................................................................................8

28 U.S.C. § 1452(b) .........................................................................................7

MH Equity Managing Member LLC's chapter 11 case was filed for one reason only: to get a lawsuit against the Debtor and some of the Debtor's cronies out of Wisconsin state court after that court made key rulings against them. Indeed, the Debtor's representatives admit that this is why the case was filed.

Stated differently, this chapter 11 case is nothing more than an exercise in forum shopping. As courts have uniformly held, forum shopping is not a proper reason to file a chapter 11 case and doing so is an abuse of the bankruptcy process. This Court should not sanction the Debtor's conduct. The chapter 11 case should be dismissed as a bad faith filing pursuant to 11 U.S.C. § 1112(b).

<u>**FACTS**</u>

A.      **The Wisconsin State Court Action**

On November 27, 2012, Menard, Inc. and Merchant Capital, LLC (collectively, the "**Merchant Creditors**") along with other parties, commenced a lawsuit against the Debtor and others in the Circuit Court of Eau Claire County, Wisconsin. <u>Complaint, Merchant Capital, *et al.* v. MH Equity Managing Member LLC, *et al.*, No. 2012 CV 734 (Eau Claire Cty., Wis.) (the "**State Court Action**"), Docket No. 1</u>.[1] The State Court Action followed Merchant Capital's June 4, 2012 removal of the Debtor as manager of MH Private Equity Fund, LLC (the "**Fund**") and its removal of Stephen Hilbert as the Fund's President and CEO. <u>Amended Complaint in State Court Action (the "**Amended Complaint**"), ¶¶ 7, 144</u>.[2] The Fund is a private equity fund

---

[1] A copy of the docket for the State Court Action can be found at:
http://wcca.wicourts.gov/courtRecordEvents.xsl;jsessionid=2C609122485554BB5F26164F3D3B3A7E.render6?caseNo=2012CV000734&countyNo=18&cacheId=31A5D07A81C41AEF6B3A9DD426428041&recordCount=1&offset=0&linkOnlyToForm=false&sortDirection=ASC.

[2] A copy of the Amended Complaint is attached hereto as <u>Exhibit 1</u>.

owned by Merchant Capital (80%) and the Debtor (20%), and funded by Merchant Capital ($288 million; Debtor contributed nothing).  Amended Complaint, ¶ 63 and Exhibit A.

      1.      **The Merchant Creditors File a Complaint Alleging Breach of Contract And Breach of Duty Against the Debtor, Hilbert, and Others**

Despite being removed from the Fund, Hilbert and the Debtor refused to relinquish control of the Fund or its assets (*i.e.*, investments in portfolio companies).  As a result, the Merchant Creditors filed a twelve-count Complaint in the State Court Action, of which four counts were directed at the Debtor: (i) breach of contract, by Merchant Capital, individually (Count IV); (ii) breach of contract, derivatively on behalf of the Fund (Count V); (iii) breach of fiduciary duty, by Merchant Capital, individually (Count VI); and (iv) breach of fiduciary duty, derivatively on behalf of the Fund (Count VII).

The Complaint was subsequently amended to add additional defendants and causes of action.  Currently, the Complaint asserts the claims referenced above, as well as the following additional causes of action against the Debtor:

      i.      aiding and abetting breach of fiduciary duty, by Merchant Capital individually and derivatively on behalf of the Fund (Count XI);

      ii.      conspiracy to breach fiduciary duty and contract, by Merchant Capital individually and derivatively on behalf of the Fund (Count XIII);

      iii.      conversion, by Merchant Capital individually and derivatively on behalf of the Fund (Count XIV);

      iv.      breach of fiduciary duty, by Plaintiff New Sunshine, LLC (Count XV);

      v.      breach of fiduciary duty, by Plaintiff United Marketing Group, LLC (Count XVII);

      vi.      breach of fiduciary duty, by Plaintiff MH Investors Satellite LLC (Count XVIII);

    vii.          aiding and abetting breach of fiduciary duty, by MH Investors Satellite LLC (Count XIX); and

    viii.         breach of fiduciary duty, by Plaintiff MH Investors United, LLC (Count XX).

    **2.**         **The Circuit Court Grants Merchant Capital's Motion for an Injunction to Enforce its June 2012 Removal of the Debtor as Fund Manager and Hilbert as President and CEO**

As noted above, after Merchant Capital removed the Debtor as the Fund's manager (and also removed Hilbert from his positions), the Debtor refused to relinquish control of the Fund. Amended Complaint, ¶ 160. As a result, on January 3, 2013, Merchant Capital filed a motion in the State Court Action for a temporary injunction to enforce the removal and require the Debtor to turn over control to Merchant Capital. State Court Action, Docket No. 4. The Debtor vigorously contested Merchant Capital's motion. *See* State Court Action, Docket Nos. 12 and 22. After extensive briefing and oral argument, the court granted the motion at a February 19, 2013 hearing.[3] February 19, 2013 Hearing Tr., pp. 38 – 39.

At the hearing, the court found that Merchant Capital's June 4, 2012 removal notice removed the Debtor as the Fund's manager. February 19, 2013 Hearing Tr., pp. 41 – 42. On March 13, 2013, the court entered an Order memorializing its February 19, 2013 ruling and ordering that:[4]

- The Debtor and Hilbert were enjoined from (i) serving as president, CEO, and manager of the Fund, and from undertaking any act or exercising any power or right in such capacity; and (ii) representing that they are the CEO, president, or manager of the Fund or any of its subsidiaries or portfolio companies. Order, ¶ 2.

- The Debtor and Hilbert shall turn over management of the Fund to Merchant Capital, which has been appointed as the manager of the Fund. Order, ¶ 4.

_____

[3] A copy of the transcript from the hearing on the Temporary Injunction Motion is attached hereto as Exhibit 2.

[4] A copy of the Order is attached hereto as Exhibit 3.

- The Debtor and Hilbert shall not knowingly or intentionally destroy or materially alter any documents belonging or relating to the Fund, or any of its subsidiaries or portfolio companies, and shall not remove any documents from any file under their control for the purpose of improperly preventing disclosure or discovery of such document.  Order, ¶ 5.

- The Debtor and Hilbert shall not take any action that unreasonably delays or interferes with the transition of the management of the Fund, or its subsidiaries or portfolio companies, to Merchant Capital or any other person or entity appointed manager of a subsidiary or portfolio company.  Order, ¶ 6.

- The Debtor and Hilbert shall cooperate with all reasonable requests by Merchant Capital to promptly transition management of the Fund, and its subsidiaries and portfolio companies, to Merchant Capital or any other person or entity appointed manager of a subsidiary or portfolio company.  Order, ¶ 7.

### 3.    The Circuit Court and Wisconsin Appellate Court Reject the Debtor's Post-Injunction Motions

Following this Order, the Debtor filed two motions related to the injunction.  First, the Debtor asked the court to force Merchant Capital to post a $12 million bond, purportedly on the grounds that this would be the amount of the Debtor's damages if the injunction was wrongly entered.  State Court Action, Docket No. 29.  Merchant Capital opposed that request and the court denied it.  State Court Action, Docket No. 34.

Second, and more significantly, the Debtor filed a petition for leave to appeal the court's injunction order in the Wisconsin Court of Appeals.  Merchant Capital v. MH Equity Managing Member, No. 2013 AP 711 (Wisc. Ct. App) (the "**State Court Appeal**"), Docket No. 1.[5] Merchant Capital opposed that petition as well and the Court of Appeals denied it.  *See* State Court Appeal, Docket No. 4.

---

[5]  A copy of the docket for the appeal in the State Court Action can be found at: http://wscca.wicourts.gov/appealHistory.xsl;jsessionid=B9286CFB87331A3B7FD2CE005D64B745?caseNo=2013 AP000711&cacheId=A57A0DB51E4C7CFF5E8C1683895C43BB&recordCount=1&offset=0&linkOnlyToForm=false&sortDirection=ASC.

4.     **Merchant Capital Discovers the Debtor's Post-Removal Diversion of Fund Assets and Seeks Discovery From Stephen and Tomisue Hilbert and Others To Whom Assets May Have Been Diverted**

After Merchant Capital obtained control of the Fund, it gained access to Fund records.  In reviewing those records, Merchant Capital made two discoveries.  First, just weeks before the Debtor was removed as Fund Manager in June 2012, it sold Fund assets (stock in ORBCOMM, a public company).  Fund's Transfer Request Form and Account Statements.[6]  Second, ***after*** the Debtor was removed and stripped of any authority "to act on behalf of the Fund in any capacity without the express approval of Merchant Capital," (Amended Complaint, Exhibit D), the Debtor diverted ██████████ proceeds ████████████████.  Debtor's Bank Records.[7]  Merchant Capital and the Fund promptly moved the court on May 1, 2013, to impose a constructive trust over the ORBCOMM sale proceeds.  State Court Action, Docket No. 54.

The activity in the Debtor's bank account is disturbing, and reveals a pattern of conduct designed to hide funds from Merchant Capital, some in response to the Wisconsin lawsuit:

---

[6] A copy of the Fund's Transfer Request Form and Account Statements are attached hereto as Group Exhibit 4.

[7] A copy of the Debtor's bank records are attached hereto as Group Exhibit 5.



*See* Debtor's Bank Records.

Given the egregious nature of the Debtor's actions, Merchant Capital became gravely concerned that there may be other instances where the Debtor has similarly diverted Fund property. Accordingly, Merchant Capital sought leave to issue subpoenas for bank account information for a number of individuals, including Hilbert; his wife, Tomisue; and the various Hilbert-related entities and individuals to which ORBCOMM funds had been diverted (some of whom the Debtor lists as creditors). State Court Action, Docket Nos. 51 and 52; In re Subpoena Duces Tecum to The National Bank of Indianapolis Corporation and JPMorgan Chase Bank, N.A., No. 49D12-1305-MI-015866 (Marion Cty., Ind.) (the "**Indiana Action**"), Docket No. 4.[8] These parties objected to the subpoenas on May 20, 2103. Indiana Action, Docket No. 9. On June 12, 2013, Merchant Capital responded. Indiana Action, Docket No. 21. In that response,

---

[8] The docket for the Indiana Action can be accessed through the Indiana Court's public records inquiry website: https://mycase.in.gov/default.aspx.

which was hand delivered to the Debtor's counsel the same day, Merchant Capital laid out damning evidence, including the evidence discussed above, establishing the movement of funds.

A hearing on the subpoenas and objections was set for June 13, 2013.  Indiana Action, Docket No. 17.  It never went forward.

**B.      The Debtor's Chapter 11 Case**

      **1.      On the Eve of the June 13, 2013 Hearing, the Debtor Files for Chapter 11 Protection Staying the State Court Action and Stopping Proceedings on the Subpoenas**

On June 11, 2013, the same day that Merchant Capital filed and served its response on the subpoena objections outlining the evidence of misconduct, the Debtor adopted resolutions authorizing the company to engage bankruptcy counsel.  *See* Resolution Adopted By Debtor and Attached to Petition, ECF No. 1.[9]  Tellingly, the resolutions authorized the Debtor to file "voluntary petitions for relief under the provisions of chapter 11 of title 11 of the United States Code ***on or before June 13, 2013***" – the date of the subpoena hearing.  *Id.*  As a result, the Debtor commenced this case on June 12, 2013.  That same day, the Debtor filed a suggestion of stay in the State Court Action.  State Court Action, Docket No. 71.  The hearing on the subpoenas was stopped.

      **2.      The Debtor Promptly Removes the State Court Action and Seeks *Immediate* Transfer to This Court**

On June 12, 2013, the same day as the bankruptcy filing, the Debtor filed a notice of removal in the State Court Action (State Court Action, Docket No. 72), purporting to remove the entire case pursuant to 28 U.S.C. § 1452(b) (including claims against non-Debtor Defendants

---

[9] A copy of the Resolution is attached hereto as Exhibit 6.

over which a district court would not have jurisdiction under 28 U.S.C. § 1334)[10] to the United States District Court Western District of Wisconsin.  Merchant Capital, LLC, *et al.* v. MH Equity Managing Member, LLC, No. 13-cv-416-bbc (W.D. Wisc.) (the "**Wisconsin District Court Action**"), ECF No. 1.  In the notice filed in the Wisconsin District Court Action, the Debtor also asked the district court to immediately transfer the case to this district for ultimate transfer to this Court.  Debtor's Notice of Removal, ¶ 7.[11]  The Debtor followed up on its request on June 24, 2013, with a formal motion to transfer the case to this district and Court pursuant to 28 U.S.C. § 1412.  Wisconsin District Court Action, ECF No. 2.

On June 25, 2013, the Merchant Creditors and the other Plaintiffs filed a motion to abstain and remand the State Court Action.  Wisconsin District Court Action, ECF No. 4.  On July 15, 2013, the same parties filed an opposition to the Debtor's motion to transfer.  Wisconsin District Court Action, ECF No. 5.  Both motions are fully briefed and remain pending before the district court in Wisconsin.

### 3.    The Debtor's Representatives Admit That Forum Shopping Is the Reason For the Chapter 11 Case

The Debtor's filings reveal that the chapter 11 case is unnecessary.  For example, the Debtor's Schedules of Assets and Liabilities reveal that the Debtor owns no real property and virtually no personal property (other than its counterclaim in the State Court Action).[12]

---

[10] Under 28 U.S.C. § 1452(a), a party may, with certain exceptions, remove "any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under [Section 1334]."  By removing the entire State Court Action, the Debtor improperly sought to have the non-Debtor Defendants piggy-back on the Debtor's removal and escape the Wisconsin state court, even though a district court would not have jurisdiction over the claims and causes of action against them under Section 1334.

[11] The Debtor's Notice of Removal is attached hereto as Exhibit 7.

[12] The only other assets listed on the Debtor's Schedule A are a bank account holding $352.39 and a few assets with "unknown" values: insurance policies, the 20% interest in the Fund, interest in the Fund Operating Agreement, and miscellaneous office equipment.

Schedules D and E list no secured or priority creditors.  *See* Schedules D and E, ECF No. 2.  And as for unsecured creditors, Schedule F lists only eight, many of which are involved in the State Court Action:

- The Debtor's landlord (Australian Gold, LLC);

- The Debtor's independent contractors (Excelsus LLC, James Adams, Rollin Dick, and Ronald Gerwig);

- The Debtor's counsel in the State Court Action (Taft Stettinius & Hollister LLP and Rudder Ware, LLC); and

- Merchant Capital.

The Debtor has also filed monthly operating reports for the months of June and July 2013.  Debtor's Monthly Operating Reports, ECF Nos. 23 and 28. They reveal that the Debtor has had no income since the Petition Date, has incurred over $138,000 in professional fees, and has paid a total of $585.55 in expenses.  *Id.*

As these schedules and reports disclose, a chapter 11 filing was not warranted.  The Debtor is not a viable entity.  Reorganization is not in the cards.  Indeed, the Debtor's representatives have confirmed as much.

A meeting of the Debtor's creditors was held on July 24, 2013.[13]  Appearing for the Debtor were its counsel, Hilbert, and the Debtor's accountant, Philip Scheffsky.  Those representatives confirmed what the schedules and reports show:

- The Debtor has moved out of its leased commercial space.  *See* Creditors' Meeting Tr., p. 13.

- The Debtor has no employees, and although the Debtor engaged independent contractors, they are not currently being paid.  *See* Creditors' Meeting Tr., pp. 12, 37.

---

[13] A copy of the transcript from the meeting of creditors is attached hereto as Exhibit 8.

- The Debtor is not currently an operating entity. *See* <u>Creditors' Meeting Tr., pp. 7-8, 9</u>.

Instead of being a valid action to reorganize a potentially viable, operating entity, the Debtor's representatives admitted this case was filed solely to get the State Court Action out of the Circuit Court of Eau Claire County, Wisconsin:

- "[O]ne of the driving forces that led to the filing of the case is that as a result of [the State Court Action], an order entered there, the company's primary stream of revenue was terminated we believe prematurely, which rendered the company unable to pay its debts as they came due." <u>Creditors' Meeting Tr., p. 5</u>.

- "[W]e need to get the [State Court] litigation organized, and we need to get the issues resolved around the assets themselves." <u>Creditors' Meeting Tr., p. 9</u>.

- "We're anticipating if the [State Court Action] gets moved here, resolution of litigation, pretty much 100 percent plan and a relatively quick emergence." <u>Creditors' Meeting Tr., p. 6</u>.

- "[O]ur goal and objective is . . . to get the [Debtor] back as an operating entity and to get all of the issues resolved around the assets, to get the litigation organized." <u>Creditors' Meeting Tr., p. 7</u>.

Simply put, this is not a valid chapter 11 case. There will never be a plan of reorganization. If the Debtor wins the State Court Action, it will simply move on with no plan filed and this case will be dismissed. If the Debtor loses, there will be nothing to reorganize.

The Debtor's chapter 11 case is about forum shopping, pure and simple.

## <u>ARGUMENT</u>

Section 1112(b)(1) of the Bankruptcy Code provides that:

on request of a party in interest and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

11 U.S.C. § 1112(b)(1).  The party moving under Section 1112(b) has the burden of proving by a preponderance of the evidence that cause exists to dismiss or convert the case. *Matter of Woodbrook Associates*, 19 F.3d 312, 317 (7th Cir.1994).

Section 1112(b)(4) sets forth sixteen grounds constituting "cause" for purposes of Section 1112(b)(1).  But the list is not exclusive and a bankruptcy court may consider other factors, and may use its equitable powers to reach an appropriate result in any individual case.  *In re Jartran, Inc.*, 886 F.2d  859, 867 n. 10 (7th Cir. 1989) (citing the legislative history at H.R. Rep. No. 95-595, 95th Cong. 1st Sess., at 405-06 (1977)).

## I.      THIS COURT HAS THE POWER TO DISMISS A CASE FILED IN BAD FAITH

Good faith has long been a prerequisite to a debtor's use of bankruptcy, and a lack of good faith is cause to dismiss a bankruptcy case.  *See In re Grieshop*, 63 B.R. 657, 662 (N.D. Ind. 1986); *In re MGN Co., III*, 116 B.R. 654, 657 (Bankr. S.D. Ind. 1989).  Although not identified as one of the grounds constituting "cause" under Section 1112(b), a court has the power to dismiss a chapter 11 case as a bad faith filing.  *See In re Grieshop*, 63 B.R. at 662; *see also In re Original IFPC Shareholders, Inc.*, 317 B.R. 738, 749 (Bankr. N.D. Ill. 2004) (collecting cases).

To show that a case was filed in bad faith, a movant need not prove that the debtor had any fraudulent or malicious intent or a scheme in mind when filing.  *See In re Original IFPC Shareholders, Inc.*, 317 B.R. at 749.  Rather, the question is whether the debtor has presented a legitimate reorganizational objective within the scope of the Bankruptcy Code or has filed for bankruptcy for "tactical reasons unrelated to reorganization."  *Id.*  In determining whether a case was filed in bad faith, courts consider the following factors:

1.      The debtor has few or no unsecured creditors;

2.      There has been a previous bankruptcy petition by the debtor or a related entity;

3.      The pre-petition conduct of the debtor has been improper;

4.      The petition effectively allows the debtor to evade court orders;

5.      There are few debts to non-moving creditors;

6.      The petition was filed on the eve of foreclosure;

7.      The foreclosed property is the sole or major asset of the debtor;

8.      The debtor has no ongoing business or employees;

9.      There is no possibility of reorganization;

10.     The debtor's income is not sufficient to operate;

11.     Reorganization essentially involves the resolution of a two-party dispute;

12.     A corporate debtor was formed and received title to its major assets immediately before the petition; and

13.     The debtor filed solely to create the automatic stay.

*In re MGN Co., III*, 116 B.R. at 657-58 (citing *In re Grieshop*, 63 B.R. at 663); *see also In re 4 C Solutions, Inc.*, 289 B.R. 354, 366 (Bankr. C.D. Ill. 2003) (citing factors from *In re Primestone Investment Partners, LP*, 272 B.R. 554 (D. Del. 2002)).  Courts do not apply these factors mechanically, but rather balance them to determine whether the debtor acted in good faith when seeking bankruptcy protection.  *See Matter of Willows of Coventry, Ltd. P'ship*, 154 B.R. 959, 967 (Bankr. N.D. Ind. 1993) (collecting cases); *see also In re Cedar Shore Resort, Inc.*, 235 F.3d 375, 379 (8th Cir. 2000) (stating the court should look at the totality of the circumstances).

## II.    THE DEBTOR'S CHAPTER 11 CASE IS A BAD FAITH FILING AND SHOULD BE DISMISSED

This Court should dismiss the Debtor's chapter 11 case.  As explained below, a majority of the factors that courts consider favor dismissal.

**A.     The Chapter 11 Case is an Exercise in Forum Shopping, Designed to Create The Automatic Stay (Factor 13) And Resolve The Debtor's Two-Party Dispute With Merchant Capital (Factor 11)**

This Chapter 11 case is about the State Court Action, nothing more.  It was filed solely for the purposes of (i) getting the State Court Action out of Wisconsin after the Debtor suffered significant losses, and (ii) creating the automatic stay to prevent Merchant Capital from learning where the Debtor diverted Fund assets.  It should be dismissed for these reasons alone.

Forum shopping is a *per se* improper reason to file a bankruptcy case.  *See In re Monsour Medical Center, Inc.*, 154 B.R. 201, 209 (Bankr. W.D. Pa. 1993) ("in summary, the majority of the debtor's board of directors have demonstrated bad faith by engaging in blatant forum shopping"); *see also In re Argus Group 1700, Inc.*, 206 B.R. 737, 753 (E.D. Pa. 1996) ("Dismissal based upon bad faith in filing has been deemed appropriate where the bankruptcy petition was filed as a litigation tactic, a forum shopping device and/or to resolve what is essentially a two-party dispute.").  When a motion to dismiss for bad faith is based upon forum shopping, courts focused on this ***one*** factor as the primary reason to dismiss.  *See e.g., In re Argus Group 1700, Inc.*, 206 B.R. at 753-54; *In re Wally Findlay Galleries (New York), Inc.*, 36 B.R. 849, 851 (Bankr. S.D.N.Y. 1984) ("[t]he debtor filed its petition herein to avoid the consequences of adverse state court decisions while it continues litigating"); *In re Monsour Medical Center, Inc.*, 154 B.R. at 208-09 ("Filing a bankruptcy petition as a tactic to litigate non-bankruptcy issues or to resolve a dispute indicates bad faith."); *In re Walter*, 108 B.R. 244, 250 (Bankr. C.D. Cal. 1989) ("Debtor's filing of their bankruptcy petition in the instant case is at bottom forum shopping . . . ."); *In re Y.J. Sons & Co., Inc.*, 212 B.R. 793, 804-05 (D. N.J. 1997) ("dismissal of a bankruptcy petition is appropriate if the debtor has filed a petition merely as a forum shopping device").

That is the case here.  The Debtor filed this case for one reason only – to change the venue of the State Court Action and escape the adverse rulings it has suffered and apparently fears it will continue to suffer.  Indeed, the Debtor has **_admitted_** that this is why it filed for bankruptcy.  By seeking to transfer the State Court Action to the Bankruptcy Court and get it "organized," the Debtor admits that it wants to re-litigate what has happened in state court and have a new court preside over the remaining proceedings in the State Court Action.  The Debtor's forum shopping is further demonstrated by its **_immediate_** removal of the State Court Action to the Western District of Wisconsin rather than using the automatic stay to "obtain some breathing room."  *See In re Argus Group 1700, Inc.*, 206 B.R. at 753-54 (debtor's bad faith motivation could be inferred from, *inter alia*, the debtor's immediate removal of litigation to bankruptcy court).

In short, the Debtor "determined that it was not going to get the best side of the coin in the state court and looked to go elsewhere to have a new bite at the apple."  *In re Heritage Wood 'N Lakes Estates, Inc.*, 73 B.R. 511, 514 (Bankr. M.D. Fla. 1987).  That is not a proper reason to file for bankruptcy.  *In re Argus Group 1700, Inc.*, 206 B.R. at 753; *see also In re Original IFPC Shareholders, Inc.*, 317 B.R. at 751 ("this case is essentially a litigation maneuver to improve IFPC's chances of proceeding uninterrupted . . . in the post-trial phases of the adjudicated trade-secret dispute").[14]

The fact that the chapter 11 case is admittedly about the State Court Action warrants dismissal.  "Where a debtor's reorganization effort involves essentially a two-party dispute

---

[14] Indeed, the nature of the State Court Action makes dismissal particularly appropriate.  The Merchant Creditors' claims against the Debtor in the State Court Action arise from the Debtor's mismanagement of the Fund, in which both Merchant Capital and the Debtor hold ownership interests.  But a "Bankruptcy Court should not be used as an alternative approach to state court procedures to resolve intra-company management and ownership disputes."  *In re MELP, Ltd.*, 143 B.R. 890, 893 (Bankr. E.D. Mo. 1992); *see also In re Argus Group 1700, Inc.*, 206 B.R. at 753 n. 26 ("[w]e also find that bad faith exists because this was filed to resolve what is, in essence, a partnership dispute").

which can be resolved in state court, and the filing for relief under chapter 11 is intended to frustrate or delay the legitimate efforts of creditors to enforce their rights against the debtor, dismissal for cause is warranted." *In re Crown Financial, Ltd.*, 183 B.R. 719, 723 (Bankr. M.D.N.C. 1995). That is precisely the case here. There are no massive debts or creditors to deal with and address. The Debtor just does not like Wisconsin state court. Filing a bankruptcy petition as a tactic to litigate non-bankruptcy issues or to resolve a two-party dispute demonstrates bad faith. *In re Monsour Medical Center, Inc.*, 154 B.R. 201, 208 (Bankr. W.D. Pa. 1993). Indeed, "[t]he Chapter is entitled reorganization and not litigation." *In re HBA East, Inc.*, 87 B.R. 248, 260 (Bankr. E.D.N.Y. 1988).

For these reasons alone, the case should be dismissed.

**B.      Other Factors Favor Dismissal As Well**

Even if the Debtor's forum shopping and attempt to use a chapter 11 case to resolve its business disputes with Merchant Capital did not warrant dismissal (and they do), the case should still be dismissed. The majority of factors support dismissal.

**1.      The Debtor Has Few or No Unsecured Creditors (Factor 1) and Few Debts to Non-Moving Creditors (Factor 5)**

Factors 1 and 5 unquestionably favor dismissal. The Debtor's Schedules list ***no*** secured or priority creditors. And of the eight general unsecured creditors listed on the Schedules, three are co-defendants with the Debtor in the State Court Action, two are the Debtor's attorneys in that action, and one (Excelsus, LLC) is a consulting company controlled by another co-defendant (Mayerfeld). *See In re St. Paul Self Storage Ltd. P'ship*, 185 B.R. 580, 583 (9th Cir. B.A.P. 1995) (debtor's "lack of creditors, other than insiders and its own professionals" supports dismissal of the bankruptcy case); *In re Schultz*, 436 B.R. 170, 178 (Bankr. M.D. Fla. 2010)

(finding lack of good faith and noting that, other than a creditor pursuing collection efforts, debtor had few unsecured creditors with claims totaling less than $37,000).

### 2.     The Debtor Engaged In Improper Pre-Petition Conduct (Factor 3)

Factor 3 also favors dismissal.  Not only did the Debtor refuse to surrender control of the Fund after it was removed in June 2012, but it looted the Fund.  After it was removed as the Fund's manager, the Debtor embezzled over ███████ of the ORBCOMM proceeds.  These actions weigh heavily in favor of dismissal.  *See In re Trident Associates Ltd. P'ship*, 52 F.3d 127, 132 (6th Cir. 1995) (finding improper pre-petition conduct, including misrepresentations to state court and unauthorized restructuring of company in violation of letter agreement with secured creditor).

### 3.     The Debtor Has No Ongoing Business or Employees (Factor 8) and The Debtor's Income Is Insufficient to Operate (Factor 10)

The Debtor's own Schedules establish that Factors 8 and 10 favor dismissal.  The Debtor does not have any employees and is not operating (*see* Creditors' Meeting Tr., pp. 7-8, 12), nor does the Debtor have any income.  *See* Creditors' Meeting Tr., p. 6; Debtor's Monthly Operating Reports, ECF Nos. 23 and 28.

### 4.     There Is No Possibility of Reorganization (Factor 9)

"Perhaps the clearest case of bad faith is where the debtor files chapter 11 knowing that there is no chance to reorganize."  *In re 4 C Solutions, Inc.*, 289 B.R. at 366 (citing *In re James Wilson Associates*, 965 F.2d 160, 170 (7th Cir. 1992)).  Resorting to the protection of bankruptcy laws "is not proper where there is no going concern to preserve, there are no employees to protect, and there is no hope of rehabilitation, except according to the debtor's terminal euphoria."  *In re Castleton Associates Ltd. P'ship*, 109 B.R. 347, 350 (Bankr. S.D. Ind. 1989)

(internal quotations omitted) (citing *Matter of Little Creek Development Co.*, 779 F.2d 1068, 1073 (5th Cir. 1986)).

At the creditors' meeting, the Debtor's representatives admitted that the Debtor's only hopes to reorganize come from winning the State Court Action and investing in companies outside of the Fund. *See* Creditors' Meeting Tr., pp. 7-8. Putting aside the fact that the Debtor's own governing documents prevent it from investing in companies outside of the Fund (Debtor Operating Agreement, § 2.2),[15] a Debtor's plan to succeed in litigation is insufficient to establish the possibility of reorganization. *See In re Premier Automotive Services, Inc.*, 492 F.3d 274, 280 (4th Cir. 2007) (debtor's proposed litigation strategy was insufficient to achieve a legitimate reorganization); *In re Edwards*, 1996 WL 407253, at *4-5 (Bankr. E.D. Pa. June 17, 1996) (no reasonable possibility of a successful reorganization within a reasonable time when the proposed reorganization was to be funded through ongoing litigation).

## CONCLUSION

The Debtor filed this chapter 11 case for one purpose – to move the State Court Action to a different forum. This is not a proper basis to seek relief under the Bankruptcy Code. This fact, coupled with the other factors discussed herein, warrant dismissal of the Debtor's chapter 11 case as a bad faith filing, pursuant to section 1112(b) of the Bankruptcy Code.

---

[15] A copy of the Debtor's operating agreement is attached hereto as Exhibit 9.

- 17 -

Dated:  August 21, 2013          Respectfully Submitted,

                                         /s/ Michael D. Freeborn
                                      Michael D. Freeborn
                                      FREEBORN & PETERS LLP
                                      311 South Wacker Drive, Suite 3000
                                      Chicago, Illinois 60606-6677
                                      Telephone: 312.360.6000
                                      Facsimile: 312.360.6995
                                      E-mail: mfreeborn@freeborn.com

*Counsel for Merchant Capital, LLC and Menard, Inc.*