**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| MH EQUITY MANAGING MEMBER, LLC | ) ) | Case No. 13-06283-JKC-11 |
| | ) | |
| Debtor. | ) ) | |

**DEBTOR'S RESPONSE IN OPPOSITION TO MERCHANT CAPITAL, LLC AND
MENARD, INC.'S MOTION TO DISMISS CHAPTER 11 CASE**

MH Equity Managing Member, LLC ("Debtor"), by and through its undersigned attorneys, hereby responds in opposition to Merchant Capital, LLC ("Merchant Capital") and Menard, Inc.'s ("Menard," collectively with Merchant Capital, the "Movants") Motion to Dismiss (the "Motion to Dismiss") (Doc. No. 33), and respectfully states as follows:

**INTRODUCTION**

Debtor has commenced this case in good faith and with a valid reorganization motive: to restart its operations and cash flow by resolving the crippling litigation waged against it by Movants. Debtor expects that it will prevail in that litigation, resume its normal operations, and pay all valid creditors in full through a chapter 11 plan of reorganization.

Nothing in the Motion to Dismiss establishes bad faith. Movants' attempts to stop that reorganization effort stem solely from their desire to put Debtor out of business. That improper motive alone calls for denial of the Motion to Dismiss. A high burden must be met to dismiss a chapter 11 case, on the basis of alleged bad faith, at this early stage. The Supreme Court has recognized that dismissal for bad faith must be limited to "extraordinary cases" when good faith "is an express statutory requirement for denying plan confirmation." *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 375 n.11 (2007). This is not an "extraordinary case." Rather,

the impetus for it is Merchant Capital's own bad acts.  Merchant Capital has not only breached its obligation to pay Debtor's management fees but also sought to improperly remove Debtor as fund manager, causing Debtor's revenue stream to dry up and  its business to become inoperable, resulting in millions of dollars in damages to Debtor.  Merchant Capital should not be allowed to compound its bad acts by denying Debtor access to bankruptcy relief.

Debtor intends, as part of this bankruptcy case, to regain its position as manager, litigate to prevail on its claims against Movants, renew its operations, replenish its revenue streams, and pay all valid claims in full.  In that light, the Motion to Dismiss must fail.  First, Movants cannot show that Debtor's case is objectively futile, which alone is sufficient to deny their motion.  Debtor will shortly file a plan of reorganization, allowing it to exit from bankruptcy, pay its creditors and emerge from bankruptcy.  Second, Movants also cannot validly assert that Debtor possessed any subjective bad faith in filing its bankruptcy petition; indeed, Debtor has engaged in no improper conduct.

Accordingly, the Motion to Dismiss fails both of the elements required for dismissal, and Movants' drastic and premature request should be denied.

## BACKGROUND AND PROCEDURAL HISTORY

**I.   Debtor's Right to Manage Fund I and Receive Management Fees, and Merchant Capital's Breach of the Operating Agreement.**

Debtor, an Indiana limited liability company, is the manager of MH Private Equity Fund, an Indiana limited liability company ("Fund I"), under that certain operating agreement, originally dated August 31, 2005, as subsequently amended (the "Operating Agreement," a copy of which is attached hereto as Exhibit 1).  The Operating Agreement is governed exclusively by Indiana law.  (Operating Agreement § 15.2.)  Debtor and Merchant Capital are Fund I's sole members with Debtor holding a 20% ownership interest and Merchant Capital holding an 80%

interest.  (*Id*. § 3.3, Ex. B.)  Stephen Hilbert ("Hilbert"), an Indiana resident, is the President and

CEO of both Debtor and Fund I.  (*Id*. §§ 4.8, 7.2.)  Debtor employs independent contractors to

help it operate its business.  (Doc. No. 2 at Schedule F.)

Under the Operating Agreement, Merchant Capital agreed that Debtor is Fund I's sole

manager.  (Operating Agreement § 4.6.)  As manager of Fund I, Debtor, in its "sole and absolute

discretion, [has] full and complete power and authority to make all decisions and to take all

actions incident to the management and conduct of [Fund I's] business and affairs."  (*Id*. at §

4.1(c).)  Debtor and Hilbert can only be removed for cause.  (*Id*. §§ 4.6, 5.12 and 5.13.)  Debtor

is entitled to a yearly management fee based, in part, on a percentage of the purchase price for all

investments held by Fund I (the "Management Fees").  (*Id*. § 5.6(b).)  Fund I is required to pay

the Management Fee "annually in advance for each Management Fee Year, on the first day of

each Management Fee Year."  (*Id*. § 5.6(a).)  Further, Merchant Capital agreed to make capital

contributions as required to pay Fund I's expenses, including the Management Fees. (*Id*. § 5.3.)

On August 4, 2011, pursuant to Section 5.3 of the Operating Agreement, Hilbert sent a

capital call notice on behalf of Fund I to Merchant Capital for a capital contribution of

$3,775,062 for Debtor's Management Fees due on August 31, 2011 (the "2011 Management

Fee").  This amount was calculated in accordance with Section 5.6 of the Operating Agreement,

as amended on May 6, 2009.  By letter dated August 24, 2011, Merchant Capital refused to make

the required capital contribution.  Despite further repeated demands, Merchant Capital never

made the required capital contribution for the 2011 Management Fee.

In May 2012, Debtor caused MH Investors Satellite LLC ("Satellite"), which is a Fund I

portfolio company, to sell 1.5 million shares that Satellite held in ORBCOMM, Inc.

("ORBCOMM") for roughly $4.4 million (the "ORBCOMM Sale").  Debtor decided to sell

these shares because ORBCOMM was a thinly-traded stock, and Debtor had been approached by ORBCOMM's investment banker with an opportunity to participate in a block trade.  Under the Operating Agreement, Debtor was empowered with the ability and the sole discretion to enter into the ORBCOMM Sale.  (Operating Agreement § 4.1.) Because it had sole discretion, the Operating Agreement did not obligate Debtor to obtain Movants' approval or even to notify them.  Nonetheless, Debtor notified certain Menard representatives, including Peter J. Liupakka, Menard's Chief Financial Officer, of the potential ORBCOMM Sale prior to its closing as early as March 2012.  Mr. Liupakka, in March of 2012, inquired as to the timing of the ORBCOMM Sale and noted, "It seems to me that may be the optimal solution to liquidating our investment there."  (March 28, 2012 Email from Mr. Liupakka to Hilbert (the "Liupakka Email"), a copy of which is attached hereto as Exhibit 2.)  Debtor ultimately executed the block trade and closed the ORBCOMM Sale once ORBCOMM had the necessary regulatory approvals for the transaction.

Through a June 4, 2012 letter, Merchant Capital attempted to remove Debtor as the manager of Fund I pursuant to Section 5.13 of the Operating Agreement (the "Defective Removal Letter," a copy of which is attached hereto as Exhibit 3).  Section 5.13 of the Operating Agreement provides that: "Merchant Capital may … remove and replace [Debtor] as the Manager of the Fund if a Cause Event … has occurred and is continuing[.]" (emphasis added).  When Merchant Capital sent that letter, no "Cause Event" had occurred and was continuing.  Indeed, the Defective Removal Letter failed to identify any facts constituting a "Cause Event" and failed to state grounds giving rise to any right for Merchant Capital to remove Debtor as manager of Fund I.  (Ex. 3.)  The Defective Removal Letter also purported to remove Hilbert as Debtor's CEO even though nothing in the Operating Agreement or Debtor's operating agreement gave Merchant Capital the authority to do so.  (Id.)  As a result, Debtor remained Fund I's

manager because Merchant Capital did not have any contractual or statutory cause or right to remove Fund I.

On August 31, 2012, due to Merchant Capital's failure to make the required capital contribution regarding the 2011 Management Fees over the past year, Debtor transferred roughly $3.7 million from Fund I to Debtor, as provided for in Section 5.6 of the Operating Agreement.[1]

## II.    Plaintiffs' State Court Action and Debtor's Counterclaims.

On November 27, 2012, Movants commenced a proceeding (the "State Court Action") in the Circuit Court of Eau Claire County, Wisconsin (the "State Court") by filing a complaint (the "Initial Complaint") against Debtor, MH Equity Managing Member II, LLC, an Indiana limited liability company ("Manager II"), and Hilbert (collectively, the "Initial Defendants") as well as nominal defendants Fund I and MH Private Equity Fund II, an Indiana limited liability company ("Fund II").  (*See* Initial Complaint, a copy of which is attached hereto as Exhibit 4 without exhibits.)  Manager II is Fund II's manager, Manager II and Merchant Capital are Fund II's sole members, and Hilbert is also the president and chief executive officer of both Manager II and Fund II.

The Initial Complaint alleged twelve counts against the Initial Defendants.  At least four of these counts were directed against Debtor, all of which concerned the creation and management of Debtor as well as Fund II.  Movants pursued a single prayer for relief against all Initial Defendants, asking for, without limitation (i) a declaratory judgment to void the Operating Agreement and remove Debtor as manager Hilbert as CEO of Fund I; (ii) a declaratory judgment to void Fund II's operating agreement and remove Manager II as manager  and Hilbert as CEO of Fund II; (iii) an injunction against Debtor, Manager II and Hilbert from taking any actions

---

[1] Debtor has a claim against Merchant Capital for $10 million, or such other amount to be proven at trial, because of this breach of the Operating Agreement  as well as numerous others, including Merchant Capital's and wrongful removal of Debtor as Manager of Fund I.  (Doc. No. 2, Schedule B.)

with respect to Fund I or Fund II; and (iv) an award of damages and punitive damages against all Initial Defendants.  (Initial Complaint at 47-48.)

On January 21, 2013, the Initial Defendants filed their Answer, Affirmative Defenses, and Counterclaims, a copy of which are attached hereto as Exhibit 5 without exhibits.  The Initial Defendants filed their amended counterclaims on March 11, 2013,  (the "Counterclaim"), which included, without limitation, a demand that Debtor be declared manager of Fund I and that certain assets and investments be returned to Debtor.  (A copy of the Counterclaim is attached hereto as Exhibit 6.)   Debtor, on behalf of Fund I, also sought an affirmative award of $3,775,062 against Merchant Capital due to its failure to make the capital contribution for the 2011 Management Fee.  (Counterclaim Count I.)

Following a hearing in which no evidence was taken, the State Court entered a "temporary injunction" regarding the removal of Debtor, Manager II, and Hilbert from their respective positions at Fund I and Fund II (the "Temporary Injunction").  (Motion to Dismiss, Ex. 3.)  Nothing in the Temporary Injunction resolved the issue of whether Debtor was properly removed as manager – nor could it, coming without any evidentiary showing and at the outset of the State Court Action.

Despite the obvious defects in the ruling, Debtor fully complied with the Temporary Injunction, turning over management of Fund I to Merchant Capital.  But since its provisional installment as manager, Merchant Capital has spitefully destroyed Fund I's investments and embarked on a vindictive litigation rampage.  Through these actions, Movants have caused millions of dollars in damages to Debtor.

More than six months after filing the Initial Complaint, Movants filed their amended complaint on May 28, 2013 (the "Amended Complaint").  (*See* Motion to Dismiss, Ex. 1.)  The

Amended Complaint added numerous parties and counts to the Initial Complaint, including without limitation: (i) five new plaintiffs, all of which are subsidiary or portfolio companies of Fund I (the "Fund I Portfolio Companies," collectively with Movants, the "State Court Plaintiffs") (Amended Complaint ¶¶ 11-15); (ii) four new defendants, all individuals added because they were allegedly retained by Hilbert and Debtor to help manage Debtor and Fund II (the "Individual Defendants," collectively with the Initial Defendants, the "State Court Defendants") (*Id.* ¶¶ 19-22); and (iii) nine additional counts.  Four of the five Fund I Portfolio Companies are Indiana limited liability companies.  (*Id.* ¶¶ 11-15.)  Three of the four Individual Defendants are Indiana residents.  (*Id.* ¶¶ 19-22.)

The Amended Complaint alleges 21 counts by nine plaintiffs against seven defendants and two nominal defendants regarding the creation and management of Funds I and II as well as the management of the Fund I Portfolio Companies.  (*See* Amended Complaint.)  Again, rather than requesting specific relief for each count, State Court Plaintiffs seek relief against all State Court Defendants on all counts, including requests for: (i) a constructive trust over assets held by the State Court Defendants, including Debtor's assets; (ii) a declaratory judgment to void the Operating Agreement and to permanently remove Debtor as Fund I's manager and Hilbert as Fund I's CEO; (iii) a permanent injunction prohibiting Debtor from taking any action with respect to Fund I; and (iv) an award of damages and punitive damages against all State Court Defendants, including Debtor.  (Amended Complaint at pp. 68-69.)

The Amended Complaint specifically names Debtor in 12 separate counts (the "Debtor Counts").  Two separate counts allege that Debtor breached the Operating Agreement, which is exclusively governed by Indiana law (Amended Complaint Counts IV and V; Operating

Agreement § 15.2) and another count alleges conversion due to Debtor's receipt of the 2011 Management Fee.  (Amended Complaint Count XIV.)

The State Court Action is, procedurally, in its infancy.  The State Court Plaintiffs have acknowledged that they had not yet – at least as of June 25, 2013 – served all of the State Court Defendants.  (Declaration of G. Richard White in Support of State Court Plaintiffs' Motion to Abstain and Remand at ¶ 8, a true copy of which is attached hereto as <u>Exhibit 7</u>.)  The responsive pleadings to the Amended Complaint are not yet due.  No deadlines have been set regarding discovery.  Plaintiffs have not filed any dispositive motions.  No trial date has been set.

## IV.    Bankruptcy and Removal Proceeding.

On June 12, 2013 (the "<u>Petition Date</u>"), Debtor filed its voluntary petition for relief. (Doc. No. 1.)  Debtor filed for bankruptcy because Merchant Capital breached its obligations under the Operating Agreement by, among other things, refusing pay for Management Fees and wrongfully attempting to remove Debtor as Fund I's manager.  These actions caused Debtor not to be operational and unable to pay accrued and ongoing claims and liabilities. The State Court Action threatens its existence and has already stymied Debtor through the Temporary Injunction. Once Debtor regains its position as manager of Fund I, Debtor intends to restart its business. That business is not limited solely to managing Fund I, as the Operating Agreement contains a mandate to explore other investments and activities, including fund raising, new fund creation, and making new investment.  (Operating Agreement §§ 4.2, 5.2.)

On the Petition Date, Debtor filed a notice of removal, removing the State Court Action to the United States District Court for the Western District of Wisconsin under 28 U.S.C. § 1452 and Federal Rule of Bankruptcy Procedure 9027.  (*See Merchant Capital, LLC, et al. v. MH Equity Management Member, LLC* (Cause No. 13-cv-416, the "<u>WDC</u>"); Motion to Dismiss, Ex.

7.)  It subsequently filed a motion to transfer the State Court Action to the United States District Court for the Southern District of Indiana under 28 U.S.C. § 1412 for further automatic referral to this Court under Southern District of Indiana Local Civil Procedure Rule 83-8(a), so that the State Court Action could be adjudicated together with Debtor's chapter 11 reorganization case. (WDC Doc. No. 2.)  The State Court Plaintiffs subsequently filed a motion to abstain and remand the State Court Action.  (WDC Doc. No. 4.)  These motions are fully briefed and pending before the Wisconsin district court.

Since filing its Petition, Debtor has fully complied with the Bankruptcy Code and all Court rules and procedures.  Debtor also filed its schedules, list of creditors and statement of financial affairs as well as all other required first day filings.  (*See* Doc. Nos. 2, 3, 4, 5, 6, 7, 8, 9.)  Debtor has also fully cooperated with all U.S. Trustee requests, timely filing all reports of operation (Doc. Nos. 22, 28, 44), paying all U.S. Trustee quarterly fees and completing its scheduled 341 meeting (Motion to Dismiss, Ex. 8).

Debtor's exclusivity period to file a plan has not yet expired.  *See* 11 U.S.C. § 1121(c). However, Debtor will file a plan of reorganization within its exclusivity period that will allow it to exit bankruptcy, conclude all litigation, re-establish itself as Fund I's manager, prosecute its own claims against Merchant Capital for its breach of the Operating Agreement, resume operating its business while reestablishing its cash flow and repay all valid creditors on account of their claim.

## LEGAL STANDARD

"Where a motion to dismiss for cause is opposed, the movant bears the burden of proving by a preponderance of the evidence that cause exists for dismissal of the debtor's bankruptcy case." *In re Woodbrook Assocs.*, 19 F.3d 312, 317 (7th Cir. 1994).  While section 1112(b)(4) sets

forth sixteen separate "causes," Movants do not invoke any of them. (Motion to Dismiss at 11.) Instead, they try to dismiss this case solely on the "unclear" basis of bad faith. *Matter of James Wilson Associates*, 965 F.2d 160, 170 (7th Cir. 1992).

But the standard for a bad-faith dismissal is even higher. The decision to dismiss a chapter 11 case for bad faith is "one to be exercised with great care and caution. Decisions denying access at the very portals of bankruptcy, before an ongoing proceeding has even begun to develop the total shape of the debtor's situation, are inherently drastic and not lightly to be made." *Carolin Corp. v. Miller*, 886 F.2d 693, 700 (4th Cir. 1989); *In re Boynton*, 184 B.R. 580, 581 (S.D. Cal. 1995) ("A lack of good faith, however, is only present where the debtors actions are a clear abuse of the bankruptcy process."). The Supreme Court has held that any dismissal for bad faith should be limited to "extraordinary cases" when good faith "is an express statutory requirement for denying plan confirmation." *Marrama*, 549 U.S. at 375 n.11 (citing *In re Love*, 957 F.2d 1350, 1356 (7th Cir. 1992)). Chapter 11 plans must be proposed in good faith pursuant to 11 U.S.C. § 1129(a)(3) such that "[d]ismissal on grounds of bad-faith filing should not be judicially developed as an easy alternative to other post-petition creditor remedies, thereby, subverting the reorganization and confirmation scheme of the Code." *In re Lumber Exch. Ltd. P'ship*, 125 B.R. 1000, 1004 (Bankr. D. Minn. 1991), *aff'd*, 968 F.2d 647 (8th Cir. 1992). "[T]he burden of establishing the company's 'good faith' should be tested where Congress placed it:  for emergence out of Chapter 11 pursuant to Section 1129." *In re John-Manville Corp.*, 36 B.R. 727, 737 (Bankr. S.D. N.Y. 1984).

A bankruptcy court may dismiss a chapter 11 petition "but only with great caution and upon supportable findings both of the objective futility of any possible reorganization and the subjective bad faith of the petitioner in invoking this form of bankruptcy protection." *Carolin*

*Corp.*, 886 F.2d at 694.  "[E]ven if subjective bad faith in filing could properly be found, dismissal is not warranted if futility cannot also be found."  *Id.* at 701; *contra In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393, 1395 (11th Cir.1988).  "Such a test obviously contemplates that it is better to risk proceeding with a wrongly motivated invocation of Chapter 11 protections whose futility is not immediately manifest than to risk cutting off even a remote chance that a reorganization effort so motivated might nevertheless yield a successful rehabilitation. Just as obviously, it contemplates that it is better to risk the wastefulness of a probably futile but good faith effort to reorganize than it is to risk error in prejudging its futility at the threshold. We believe that such a stringent test is necessary to accommodate the various and conflicting interests of debtors, creditors, and the courts that are at stake in deciding whether to deny threshold access to Chapter 11 proceedings for want of good faith in filing."  *Id.*

Although cases exploring bad faith dismissal often list a multitude of factors to consider "in determining whether the debtor filed in bad faith, no one factor is determinative. Rather, the court must look at all of the facts and circumstances to determine whether the debtor has a need and ability to reorganize under Chapter 11."  *In re Bellevue Place Assocs.*, 171 B.R. 628, 634 (Bankr. N.D. Ill. 1994); *see also Carolin Corp.*, 886 F.2d at 701; *In re Dunes Hotel Assocs.*, 188 B.R. 162, 169 (Bankr. D. S.C. 1995).

## ARGUMENT

I.     **This Case is Not Objectively Futile, which Alone is Sufficient to Deny the Motion to Dismiss.**

"The objective futility inquiry is designed to insure that there is embodied in the petition 'some relation to the statutory objective of resuscitating a financially troubled [debtor].'"  *Carolin Corp.*, 886 F.2d at 701-702 (4th Cir. 1989) (quoting *In re Coastal Cable TV, Inc.*, 709 F.2d 762, 765 (1st Cir.1983)).  Debtor's petition should not be dismissed if there is "even a

remote chance that a reorganization effort [even if wrongly] motivated might nevertheless yield a successful rehabilitation." *Id*. at 701. A movant's failure to establish objective futility alone requires denial of their motion to dismiss for bad faith. *Id*.; *Dunes Hotel*, 188 B.R. at 170 (denying motion to dismiss based upon bad faith for failure to establish objective futility).

### A.    There is No Bad Faith.

Movants claim that the State Court Action somehow deprives Debtor of its right to conduct a chapter 11 case and taints its petition with bad faith. But the State Court Action threatens Debtor's existence and has already deprived Debtor of its ability to operate its business and pay its creditors. A bankruptcy filing under these circumstances should come as no surprise.

Indeed, it is well-settled that it is not bad faith for a debtor to file a chapter 11 petition when there is pending state court litigation that threatens a debtor's existence and has already affected Debtor's ability to operate. *James Wilson*, 965 F.2d at 171 (finding no indication of bad faith from the mere fact that a single-asset debtor filed its chapter 11 petition after the mortgagee brought a foreclosure action in state court and obtained a receiver to collect rents because appointment of receiver denied debtor its sole income source from which to pay its creditors); *Bellevue Place*, 171 B.R. at 634 (denying motion to dismiss chapter 11 petition filed by single-asset hotel debtor as bad faith filing when state foreclosure action was pending, as litigation threatened debtor's existence through both foreclosure and the removal of hotel's manager); *In re The Bible Speaks*, 65 B.R. 415, 426, 428 (Bankr. D. Mass. 1986) (denying motion to dismiss as bad-faith filing when single state court action "alone present[ed] sufficient reason for a Chapter 11 reorganization" because it threatened debtor's continued existence, debtor could no longer obtain financing and "there is no reason that Debtor in this case, even without its pressing cash flow problems, should be required to … seek reorganization under Chapter 11 only if it is unsuccessful in the . . . litigation."); *Dunes Hotel*, 188 B.R. at 171 (denying motion to dismiss

chapter 11 petition filed by single asset hotel debtor as bad faith filing when debtor "confronted a clear financial crisis . . . and was threatened with the loss of a valuable asset" due to pending state foreclosure action); *In re Muralo Co., Inc.*, 301 B.R. 690, 700 (Bankr. D. N.J. 2003) (denying motion to dismiss based on alleged bad faith when debtor filed chapter 11 petition because it was faced with potential insolvency from personal injury lawsuits and its proposal to litigate "as the cornerstone of their current bankruptcy case ... is not indicative of 'bad faith.' . . . In some sense, essentially all bankruptcy filings are 'litigation tactics' as countermeasures to debt collection efforts."); *John-Manville*, 36 B.R. at 738-39 (denying motion to dismiss for bad faith when chapter 11 case filed because of litigation when litigation "threaten[ed] to put [debtor] out of existence."); *see also In re Alton Tele. Printing Comp.*, 14 B.R. 238 (Bankr. S.D. Ill. 1981) (denying motion to dismiss chapter 11 petition filed in lieu of debtor filing an appeal bond after state court had entered judgment so large that it threatened debtor's existence and disrupted its business).

The State Court Action threatens Debtor's existence.  The State Court Plaintiffs name Debtor in 12 separate counts, including a conversion count alleging that Debtor's receipt of over $3.7 million from the 2011 Management Fee was improper. (*See* Amended Complaint.) Moreover, Plaintiffs ask for (i) the imposition of a constructive trust over Debtor's assets; (ii) a declaratory judgment to void the Operating Agreement and to permanently remove Debtor as Fund I's manager; (iii) a permanent injunction prohibiting Debtor from taking any action with respect to Fund I; and (iv) an award of damages and punitive damages against Debtor.  (*Id.* at pp. 68-69.)  Thus, the State Court Plaintiffs seek to permanently deprive Debtor of its right to manage Fund I and ability to generate any income, while demanding the disgorgement of $3.7 million when Debtor only had $352.39 in cash on the Petition Date.  (Doc. No. 2 at Schedule B.)

The State Court Action has already affected Debtor's ability to operate its business. The Temporary Injunction has removed Debtor as manager of Fund I during the pendency of the State Court Action. (Motion to Dismiss, Ex. 3.) As a result, Debtor is not presently an operating business because its revenue stream and management rights have been temporarily severed. However, Debtor is considering several potential transactions, which are entirely unrelated to the State Court Action.

This case is similar to *James Wilson*, where the Seventh Circuit found that a chapter 11 debtor did not file its petition in bad faith, but instead for the legitimate reorganization of its debts and to regain possession of its building and rents, when a debtor filed for bankruptcy protection after a state court appointed a receiver with the authority to collect rents because the appointment of receiver denied that debtor its operating income. 965 F.3d at 171; *see also Bellevue Place*, 65 B.R. at 634-35 (denying motion to dismiss on bad faith grounds where foreclosure suit would have resulted in removal of manager and bankruptcy court offered a forum to administer all claims against debtor). As in *James Wilson* and *Bellevue Place*, along with the other cases cited above, the State Court Action threatens Debtor's very existence and has already negatively affected Debtor's ability to operate its business. Thus, the existence of the State Court Action is a permissible reason for Debtor to file this case and may be the focus of Debtor's reorganization plan.

### B.    Debtor Will File a Plan of Reorganization within its Exclusivity Period.

Debtor will file a plan of reorganization, contrary to Movants' unsupported assertion (Motion to Dismiss at 10), within its exclusive period. *See* 11 U.S.C. § 1121(c). Debtor's envisioned plan for reorganization will allow Debtor to:

1.    Successfully defend the claims leveled by the State Court Plaintiffs and preserve Debtor's rights under the Operating Agreement, including its right to manage Fund I and receive the Management Fees;

2.    Prosecute Debtor's $10 million claim against Merchant Capital for its breaches of the Operating Agreement;

3.    Resume business operations and reestablish its cash flow by managing Fund I, while exploring other investments and activities, including fund raising, new fund creation, and making new investment; and

4.    Repay all valid creditors in full on account of their claims (*See* Doc. No. 2, Schedule F).

Again, there is nothing suggestive of bad faith in having pending litigation be the "cornerstone" for a plan of reorganization. (*See supra* Section I.A. (quoting *Muralo*, 301 B.R. at 700).)[2]  Debtor is also confident that it will win the aforementioned litigation given Movants' overt bad acts.  Furthermore, Movants shoulder the burden of showing that Debtor would not have "even a remote chance" of a successful reorganization. *See Carolin Corp.*, 886 F.2d at 701. This is clearly not the case given Debtor's envisioned plan.  Accordingly, the Motion to Dismiss fails to satisfy the objective futility element at this early stage in the bankruptcy case and should be denied.

### C.    There Has Been No Forum Shopping.

Movants also attempt to spin Debtor's litigation efforts as impermissible forum shopping. (Motion to Dismiss at pp. 13-15.)  But they fail to support their allegations with relevant facts.

Moreover, even the case law cited by Movants does not support their position.  These cases instead show that no binding authority supports Movants' argument that what Movants call

---

[2] Movants cite to two cases in support of their contention that litigation is insufficient to establish the possibility of reorganization, both of which are distinguishable and irrelevant to this matter.  First, *In re Edwards*, 1996 WL 407253 (Bankr. E.D. Pa. 1996) involved an individual debtor that filed a chapter 11 case on the eve of a foreclosure sale to avoid foreclosure on his residence.  The *Edwards* court found that debtor's proposed employment litigation to fund the plan was pointless because the creditor that brought the foreclosure action was entitled to relief from the stay, making debtor's sole reason for bankruptcy moot.  *Id.* at *5-6.  Second, *In re Premier Automotive Services, Inc.*, 492 F.3d 274, 280 (4th Cir. 2007), concerned a debtor whose proposed plan included litigating its lessor's decision not to extend a commercial lease.  The *Premier Automotive* court found that debtor had no right in the property as a lessee or under the contract as well as no right to judicially compel negotiations with the lessor through its bankruptcy.

"forum shopping" is an improper motivation for filing bankruptcy. The only potentially-relevant authority cited by Movants is inapposite here. That authority provides that dismissal could be warranted (i) when the debtor is in good financial condition,[3] or (ii) when the debtor asks the bankruptcy court to serve as an appellate court to review a state court order or sought to circumvent one.[4]

Neither of these scenarios are present here. First, Debtor is unquestionably in poor financial health, as it is not presently operational and its revenue stream has been at least temporarily cut off. Second, Debtor has complied with the Temporary Injunction since its entry and during the pendency of this case, and it is not asking this court to sit in review of it. The State Court has made no final ruling on the merits, and Debtor is not trying to escape from any final judgment. In fact, the State Court Action remains in its infancy. No deadlines have been set regarding discovery, plaintiffs have not filed any dispositive motions, and no trial date is set. Accordingly, Movants have failed to support their forum-shopping contention. *See In re MV Pipeline Comp.*, 2007 WL 1452591, *14 (Bankr. E.D. Okla. 2007) (rejecting contention that Debtor filed petition in "bad faith" to shift venue from state court to bankruptcy court even though debtor and its creditors had filed lawsuits in separate state courts and debtor had lost its

---

[3] *See Steinman v. Spencer (In re Arden Phoenix Group 1700)*, 206 B.R. 737, 752 (Bankr. E.D. Pa. 1996) (debtor was operating on a "better than break even basis" such that it was not forced to file its bankruptcy case).

[4] *Stein v. Monsour Medical Center, Inc. (In re Monsour Med. Ctr., Inc.)*, 154 B.R. 201 (Bankr. W.D. Pa. 1993) (bare majority of debtor's board of directors filed chapter 11 petition to oust receiver after numerous attempts in state court failed less than four years after it exited a previous chapter 11); *In re Wally Findlay Galleries (New York), Inc.*, 36 B.R. 849, 851 (Bankr. S.D. N.Y. 1984) (debtor impermissibly asked bankruptcy court to act as an appellate court and review a state court's grant of summary judgment); *Y.J. Sons & Co., Inc. v. Galen, Inc. (In re Y.J. Sons & Co., Inc.)*, 212 B.R. 793 (Bankr. D. N.J. 1997) (debtor filed chapter 11 petition to circumvent a final sale order of its business approved by state court with conditions subsequent pending). The remainder of the cases cited by Movants are irrelevant and distinguishable. *See In re Heritage Wood 'n Lakes Estates, Inc.*, 73 B.R. 511 (Bankr. M.D. Fla. 1987) (single-asset real estate case where debtor had no equity in the property and was subject to a RICO action that bankruptcy had no subject matter jurisdiction over); *In re Walter*, 108 B.R. 244, 248-49 (Bankr. C.D. Cal. 1989) (debtors were individuals that did not run any business and filed their chapter 11 petition to save their personal residence); *Crown Fin.*, 183 B.R. 719 (finding objective futility justifying dismissal for bad faith filing because debtor did not plan to initiate ongoing business so that there was no realistic possibility of effective reorganization).

motion to transfer because of debtor's financial distress, its operating losses, and it owned assets with economic value).

What Movants are really saying is: they do not want to litigate outside of Movants' hometown court. That is no basis for dismissal. Debtor is entitled to seek all available relief. As the Seventh Circuit explicitly noted in *James Wilson*: "It is not bad faith to seek to gain an advantage from declaring bankruptcy – why else would one declare it?" 965 F.2d at 170. Debtor filed its petition in the most obvious (and, perhaps, only available) venue – the Southern District of Indiana. Debtor then filed the motions to remove and transfer the State Court Action to the Southern District of Indiana based solely upon the statutory rights granted by Congress to debtors. *See* 28 U.S.C. §§ 1412, 1452. As in *James Wilson*, this Court may not punish Debtor for simply exercising its statutory rights within the bankruptcy process.

## II. Movants Fail to Prove Subjective Bad Faith, Which Alone is Sufficient to Deny the Motion to Dismiss.

"The subjective bad faith inquiry is designed to insure that the petitioner actually intends to use the provisions of Chapter 11 . . . to reorganize or rehabilitate an existing enterprise, or to preserve going concern values of a viable or existing business. Put obversely, its aim is to determine whether the petitioner's real motivation is to abuse the reorganization process and to cause hardship or to delay creditors by resort to the Chapter 11 device merely for the purpose of invoking the automatic stay, without an intent or ability to reorganize his financial activities." *Carolin Corp.*, 886 F.2d at 701-702 (internal citations omitted). "*[T]he totality of the circumstances in a case should govern the [subjective bad faith] analysis*. It is not appropriate to limit or focus upon any particular 'indicia' or pattern otherwise associated with bad faith or to engage in counting the 'indicia. There is no single factor that will necessarily lead to a finding of bad faith.'" *Dunes Hotel*, 188 B.R. at 171 (Bankr. D. S.C. 1995) (emphasis original).

17

Movants try to manipulate a factor analysis performed by some courts to support their allegation of subjective bad faith. But their efforts are illusory.

First, Debtor has not been engaged in any improper pre-petition conduct. Movants contend that Debtor impermissibly refused to surrender control over Fund I in June 2012. (Motion to Dismiss at 16.) But the Defective Removal Letter failed to state any Cause Event, as required by the Operating Agreement to remove Debtor as manager of Fund I. Thus, Debtor properly remained Fund I's manager because Merchant Capital had no contractual or statutory right to remove Debtor.

Movants also allege that Debtor "looted" Fund I as a part of a smear campaign designed to cover up Merchant Capital's failure to pay the 2011 Management Fee. (Motion to Dismiss at 16.) The ORBCOMM Sale occurred within the ordinary course of Debtor's business as Fund I's manager and was entirely within its authority granted it under the Operating Agreement. (*See* Operating Agreement § 4.1.) The decision to execute the ORBCOMM Sale was not related to the payment of the 2011 Management Fees, but instead was a valid and prudent exercise of Debtor's management duties. Debtor decided to sell these shares because it had held the shares, which were thinly-traded, for many years, and had been invited by ORBCOMM to participate in a block trade. The prudence of the sale was confirmed by Menard's CFO, Peter J. Liupakka, who agreed the ORBCOMM Sale constituted "the optimal solution." (*See* Liupakka Email.)

While Merchant Capital attempts to impute a nefarious purpose for the timing of the August 31, 2012 transaction, the timing is solely the result of Merchant Capital's bad acts. After waiting for Merchant Capital to honor the August 2011 capital call for over one year, Debtor exercised its right to receive the 2011 Management Fee directly from Fund I pursuant to Section 5.6 of the Operating Agreement. Not only did Debtor act within its authority under the

Operating Agreement, but Merchant Capital has never answered the August 2011 capital call in breach of the Operating Agreement.

Second, Debtor has only acted with the intention of completing a successful chapter 11 reorganization. *See Bible Speaks*, 65 B.R. at 423 (denying motion to dismiss for bad faith and noting the debtor's proper post-petition conduct must also be considered). Debtor has complied with all filing requirements imposed by this Court. (*See* Doc. Nos. 2, 3, 4, 5, 6, 7, 8, 9.) It also timely made all reports and payments to the United States Trustee, while completing its schedule 341 meeting. (Docs. 22, 29, 44; Motion to Dismiss, Ex. 8.) Furthermore, Debtor's exclusivity period has not yet expired. It will file a plan of reorganization soon and has provided this Court with a general outline of the same. None of these actions point to bad faith.

Third, Movants' allegation that Debtor's lack an ongoing business and has insufficient income is misleading at best because, to the extent true, this is the direct result of Merchant Capital's bad acts.[5] (Motion to Dismiss at 16.) Merchant Capital has refused to pay the 2011 Management Fee and caused Debtor millions of dollars of damages as a result of Merchant Capital's breaches of the Operating Agreement. (*See* Doc. Nos. 2, Schedule B.) Even worse, Merchant Capital sued to remove Debtor as Fund I's manager in breach of the Operating Agreement and caused Debtor's revenue stream to dry up, ending its ability to pay accrued and ongoing claims and liabilities. These factors actually evidence Movants' bad faith.

While Movants take issue with the number of creditors scheduled in this case, this alone is insufficient to deem this case a bad faith filing. The fact that some of Debtor's existing creditors are either insiders or litigants "does not mean that the debtor should not be able to

---

[5] Movant also contend that Debtor's lack of employees should somehow favor subjective bad faith. But the fact that Debtor has independent contractors rather than employees is irrelevant. *MV Pipeline*, 2007 WL 1452591 at *13 ("when the debtor is an operating entity, whether its business tasks are performed by an independent contractor or employees is irrelevant.")

utilize Chapter 11 to liquidate the amount of insiders' claims or to propose a structure to pay the debts in a fair and orderly fashion." *MV Pipeline*, 2007 WL 1452591 at *13 (citing *In re Walden Ridge Development, LLC*, 292 B.R. 58, 64 (Bankr. D. N.J. 2003)).  Moreover, Debtor has already demonstrated that it will file a plan of reorganization that is not objectively futile and that it did not file its case to re-litigate or avoid any state court ruling.

In reviewing Movants' thin and misleading allegations, together with applicable statutory and case law, Movants have fallen far short of showing subjective bad faith, and the Motion to Dismiss should be denied for this reason alone.

## CONCLUSION

Movants have shown neither objective futility nor subjective bad faith.  The Motion to Dismiss fails to meet the extraordinary standard required to dismiss a bankruptcy filing for bad faith at this early stage in the proceedings. Accordingly, Debtor MH Equity Managing Member, LLC respectfully requests that this Court deny the Motion to Dismiss and grant such other relief as the Court deems just and proper.

Dated: September 20, 2013

Respectfully submitted,

By:  /s/ *John P. Sieger*

John P. Sieger
Paul T. Musser
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe Street
Chicago, Illinois 60661-3693
Telephone: (312) 902-5200
Facsimile: (312) 902-1061
John.Sieger@kattenlaw.com
Paul.Musser@kattenlaw.com

and

Jeffrey A. Hokanson
Jeremy M. Dunn
FROST BROWN TODD LLC
201 N. Illinois Street
Suite 1900
Indianapolis, Indiana 46204-4236
Telephone: (317) 237-3962
Facsimile: (317) 237-3900
jhokanson@fbtlaw.com
jdunn@fbtlaw.com

*Counsel to the Debtor and Debtor in
Possession*

## CERTIFICATE OF SERVICE

I hereby certify that ***Debtor's Response in Opposition to Merchant Capital, LLC and Menard, Inc.'s Motion to Dismiss Chapter 11 Case*** was served upon the following parties of record via this Court electronic filing system on the date it was filed, September 20, 2013:

Jeremy M. Dunn on behalf of Debtor MH Equity Managing Member LLC
jdunn@fbtlaw.com

Jeffrey A Hokanson on behalf of Debtor MH Equity Managing Member LLC
jhokanson@fbtlaw.com

Paul T. Musser on behalf of Debtor MH Equity Managing Member LLC
paul.musser@kattenlaw.com

John P. Sieger on behalf of Debtor MH Equity Managing Member LLC
john.sieger@kattenlaw.com

Joseph F. McGonigal Office of U.S. Trustee
joe.mcgonigal@usdoj.gov

U.S. Trustee
ustpregion10.in.ecf@usdoj.gov

Michael D Freeborn on behalf of Creditors Menard, Inc., Merchant Capital LLC
mfreeborn@freeborn.com

By:      /s/ *John P. Sieger*

John P. Sieger
KATTEN MUCHIN ROSENMAN LLP
525 W. Monroe Street
Chicago, IL 60661-3693
Tel:  (312) 902-5200
Fax:  (312) 902-1061
john.sieger@kattenlaw.com