## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF INDIANA

-----------------------------------------------------------x

In re                                         Chapter 11

MH EQUITY MANAGING MEMBER, LLC      Case No. 13-06283-JKC-11

                     Debtor.               Hon. James K. Coachys

-----------------------------------------------------------x

## DISCLOSURE STATEMENT WITH RESPECT TO DEBTOR'S
## CHAPTER 11 PLAN OF REORGANIZATION

Dated: October 10, 2013

KATTEN MUCHIN ROSENMAN LLP          FROST BROWN TODD, LLC
John P. Sieger                                Jeffrey A. Hokanson
525 W. Monroe Street, Suite 1900            201 North Illinois Street, Suite 1900
Chicago, Illinois 60661                      P.O. Box 44961
                                                Indianapolis, Indiana 46244-0961

**Attorneys for MH Equity Managing Member, LLC**

ALL CREDITORS ARE ADVISED AND ENCOURAGED TO READ THIS DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.   PLAN SUMMARIES AND STATEMENTS MADE IN THIS DISCLOSURE STATEMENT, INCLUDING THE FOLLOWING SUMMARY, ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN, ANY AND ALL SUPPLEMENTS TO THE PLAN AND THE OTHER EXHIBITS ANNEXED TO THE PLAN AND THIS DISCLOSURE STATEMENT. THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE ONLY AS OF THE DATE HEREOF UNLESS OTHERWISE SPECIFIED, AND THERE CAN BE NO ASSURANCE THAT THE STATEMENTS CONTAINED HEREIN WILL BE CORRECT AT ANY TIME AFTER SUCH DATE.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND RULE 3016 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND NOT NECESSARILY IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE LAW.   THIS DISCLOSURE STATEMENT HAS NEITHER BEEN APPROVED NOR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION (THE "SEC") NOR HAS THE SEC PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.  PERSONS OR ENTITIES TRADING IN OR OTHERWISE PURCHASING, SELLING OR TRANSFERRING CLAIMS SHOULD EVALUATE THIS DISCLOSURE STATEMENT AND THE PLAN IN LIGHT OF THE PURPOSES FOR WHICH THEY WERE PREPARED.

CERTAIN STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT, INCLUDING FORWARD-LOOKING STATEMENTS, ARE BASED ON ESTIMATES AND ASSUMPTIONS.   THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL REFLECT ACTUAL OUTCOMES.

THE INFORMATION IN THIS DISCLOSURE STATEMENT IS BEING PROVIDED SOLELY FOR PURPOSES OF VOTING TO ACCEPT OR REJECT THE PLAN.  NOTHING IN THIS DISCLOSURE STATEMENT MAY BE USED BY ANY PERSON OR ENTITY FOR ANY OTHER PURPOSE.   THE FACTUAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT, INCLUDING THE DESCRIPTION OF THE DEBTOR, ITS BUSINESS AND EVENTS LEADING TO THE COMMENCEMENT OF THIS CHAPTER 11 CASE, HAS BEEN OBTAINED FROM VARIOUS DOCUMENTS, AGREEMENTS AND OTHER WRITINGS RELATING TO THE DEBTOR.  NEITHER THE DEBTOR NOR ANY OTHER PARTY MAKES ANY REPRESENTATION OR WARRANTY REGARDING SUCH INFORMATION.

THE TERMS OF THE PLAN GOVERN IN THE EVENT OF ANY INCONSISTENCY WITH THE SUMMARIES IN THIS DISCLOSURE STATEMENT. ALL EXHIBITS TO THE DISCLOSURE STATEMENT ARE INCORPORATED INTO AND ARE A PART OF THIS DISCLOSURE STATEMENT AS IF SET FORTH IN FULL HEREIN.

AS TO CONTESTED MATTERS, EXISTING LITIGATION INVOLVING THE DEBTOR, ADVERSARY PROCEEDINGS, AND OTHER ACTIONS OR THREATENED ACTIONS, THIS DISCLOSURE STATEMENT SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION OR WAIVER, BUT RATHER AS A STATEMENT MADE WITHOUT PREJUDICE SOLELY FOR SETTLEMENT PURPOSES, WITH FULL RESERVATION OF RIGHTS, AND IS NOT TO BE USED FOR ANY LITIGATION PURPOSE WHATSOEVER. AS SUCH, THIS DISCLOSURE STATEMENT SHALL NOT BE ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING INVOLVING THE DEBTOR, OR ANY OTHER PARTY IN INTEREST, NOR SHALL IT BE CONSTRUED TO BE CONCLUSIVE ADVICE ON THE TAX, SECURITIES, FINANCIAL OR OTHER EFFECTS OF THE REORGANIZATION AS TO HOLDERS OF CLAIMS AGAINST OR EQUITY INTERESTS IN THE DEBTOR.

TO ENSURE COMPLIANCE WITH TREASURY DEPARTMENT CIRCULAR 230, EACH HOLDER IS HEREBY NOTIFIED THAT (A) ANY DISCUSSION OF U.S. FEDERAL TAX ISSUES IN THIS DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE RELIED UPON, AND CANNOT BE RELIED UPON, BY ANY HOLDER FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON A HOLDER UNDER THE TAX CODE; (B) SUCH DISCUSSION IS INCLUDED HEREBY BY THE DEBTOR IN CONNECTION WITH THE PROMOTION OR MARKETING (WITHIN THE MEANING OF CIRCULAR 230) BY THE DEBTOR OF THE TRANSACTIONS OR MATTERS ADDRESSED HEREIN; AND (C) EACH HOLDER SHOULD SEEK ADVICE BASED ON ITS PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

SUMMARY OF TREATMENT OF CLAIMS AND INTERESTS ............................................. 4

OVERVIEW OF CHAPTER 11 .......................................................................................... 5

DESCRIPTION OF DEBTOR'S BUSINESSES ...................................................................... 6

THE CHAPTER 11 CASE ................................................................................................. 8

SUMMARY OF PLAN OF REORGANIZATION .................................................................. 9

CONFIRMATION PROCEDURE ........................................................................................ 23

ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN ............. 27

CERTAIN RISK FACTORS TO BE CONSIDERED .............................................................. 28

SECURITIES LAWS MATTERS ......................................................................................... 30

CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ....................... 30

RECOMMENDATIONS AND CONCLUSION ..................................................................... 33

**EXHIBIT A—PLAN**

**EXHIBIT B—LIQUIDATION ANALYSIS**

## I.
## INTRODUCTION

On June 12, 2013 (the "Petition Date"), MH Equity Managing Member, LLC (the "Debtor") filed a voluntary petition for relief under chapter 11 of the title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of Indiana (the "Bankruptcy Court"). Contemporaneously herewith, the Debtor filed its Chapter 11 Plan of Reorganization (as may be further amended, modified or supplemented, the "Plan"), a copy of which is annexed as Exhibit "A", which sets forth the manner in which Claims against and Equity Interests in the Debtor will be treated. This Disclosure Statement (the "Disclosure Statement") describes certain aspects of the Plan (including the treatment of creditor Claims under the Plan), the Debtor's business, and related matters. Unless otherwise defined, all capitalized terms have the meanings ascribed to them in the Plan.

As discussed more fully below, after a careful review of its business, and after extensive negotiations, the Debtor, in consultation with its advisors, have concluded that recoveries to creditors will be maximized under the Plan and by the reorganization of the Debtor as contemplated by the Plan, as contrasted with other possible alternatives.

This Disclosure Statement is submitted to Holders of Claims against and Interests in the Debtor in connection with (i) the solicitation of acceptances of the Plan and (ii) the hearing to consider confirmation of the Plan (the "Confirmation Hearing") presently scheduled for [   ], 2013, at [   ] (prevailing Eastern Time).

Attached as Exhibits to this Disclosure Statement are copies of the following:

- The Plan (Exhibit A); and
- Liquidation Analysis (Exhibit B).

The Debtor has moved the Bankruptcy Court for an order, to be entered prior to an order confirming the Plan, approving this Disclosure Statement as containing "adequate information" to enable a hypothetical, reasonable investor typical of the Holders of Claims and Equity Interests to make an informed judgment as to the Plan.

These documents contain, among other things, important information concerning the classification of Claims and Equity Interests for voting purposes and the tabulation of votes. No solicitation of a vote to accept the Plan may be made without giving the voter a Disclosure Statement approved by the Bankruptcy Court.

## A.    Holders of Claims and Equity Interests Entitled to Vote

Only impaired Holders of Allowed Claims or Equity Interests are entitled to vote to accept or reject a proposed chapter 11 plan. Unimpaired Classes are deemed to have accepted the Plan and are not entitled to vote. Classes of Claims or Equity Interests that will not receive any distribution under a reorganization plan are deemed to have rejected such plan and also are not entitled to vote.

Under the Plan, Class 1 (Priority Non-Tax Claims), Class 2 (General Unsecured Claims), and Class 4 (Equity Interests) are unimpaired and conclusively deemed to accept the Plan. Class 3 (Subordinated Claims) will receive no distributions under the Plan and are therefore deemed to have rejected the Plan.

The Bankruptcy Code defines "acceptance" of a plan by a class of claims as acceptance by creditors in that class that hold at least two-thirds in dollar amount and more than one-half in number of the claims that vote for acceptance or rejection of the plan.

## B.    Voting Procedures

Since no Class of Claims or Equity Interests is entitled to vote to accept or reject the Plan, no Ballots will be distributed.

## C.    Confirmation Hearing

The Confirmation Hearing will be held on [ ], 2013 at [ ], prevailing Eastern time, before the Honorable James K Coachys, United States Bankruptcy Judge, Birch Bayh Federal Building and United States Courthouse, 46 E. Ohio Street, Indianapolis, IN 46204. The Bankruptcy Court has directed that objections, if any, to confirmation of the Plan be served and Filed so that they are received on or before [ ], at 5:00 p.m., prevailing Eastern time. Service of any objection to confirmation must be served upon (i) counsel for the Debtor, Katten Muchin Rosenman LLP, 525 W. Monroe Street, Suite 1900, Chicago, IL 60661, Attn: John P. Sieger, and Frost Brown Todd, LLC, 201 North Illinois Street, Suite 1900, P.O. Box 44961, Indianapolis, IN 46244-0961, Attn: Jeffrey A. Hokanson and (ii) the Office of the United States Trustee, 101 West Ohio Street, Suite 1000, Indianapolis, IN 46204, Attn: Joseph F. McGonigal (the foregoing, collectively, the "Notice Parties"). The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for the announcement of the adjournment date made at the Confirmation Hearing or at any subsequent adjourned Confirmation Hearing.

THE DEBTOR BELIEVES THAT THE PLAN WILL ENABLE THE DEBTOR TO MAXIMIZE RECOVERIES TO ITS CREDITORS AND EQUITY INTEREST HOLDERS AND ACCOMPLISH THE OBJECTIVES OF CHAPTER 11. THE DEBTOR BELIEVES THAT ACCEPTANCE OF THE PLAN IS IN THE BEST INTERESTS OF THE DEBTOR AND ITS CREDITORS. THE DEBTOR URGES CREDITORS AND EQUITY INTERESTS HOLDERS SUPPORT THE PLAN.

**II.**
**SUMMARY OF THE TREATMENT OF CLAIMS AND INTERESTS**

The table below briefly summarizes the specific classification and treatment of Claims and Equity Interests under the Plan. As provided in the Plan, Administrative Expense Claims, Priority Tax Claims, and Professional Fee Claims have not been classified and are excluded from the following Classes in accordance with section 1123(a)(1) of the Bankruptcy Code:

| Class | Type of Claim or Equity Interest | Treatment | Estimated Claim Amount (By Class) | Estimated Recovery |
|---|---|---|---|---|
| 1 | Priority Non-Tax Claims | Unimpaired. To the extent not previously paid, on the later to occur of (a) the Effective Date (or as soon as reasonably practicable thereafter) and (b) the date on which a Priority Non-Tax Claim shall become Allowed, the Debtor, in full and final satisfaction of such Priority Non-Tax Claim, will (i) pay to each Holder of an Allowed Priority Non-Tax Claim, in cash, the full amount of such Allowed Non-Priority Tax Claim, or (ii) satisfy and discharge such Allowed Non-Priority Tax Claim on such other terms and conditions as may be agreed between the Holder of such Allowed Priority Non-Tax Claim and the Debtor. | $[ ] | 100% |
| 2 | General Unsecured Claims | Unimpaired. On the later to occur of (a) the Effective Date (or as soon as reasonably practicable thereafter) and (b) the date on which a General Unsecured Claim shall become Allowed, the Debtor, in full and final satisfaction of such General Unsecured Claim, will (i) pay to each Holder of an Allowed General Unsecured Claim, in cash, the full amount of such Allowed General Unsecured Claim, or (ii) satisfy and discharge such Allowed General Unsecured Claim on such other terms and conditions as may be agreed between the Holder of such Allowed General Unsecured Claim and the Debtor. | $[ ] | 100% |
| 3 | Subordinated Claims | Impaired. On the Effective Date, the Subordinated Claims shall be disallowed and expunged in their entirety and with prejudice. Subordinated Claims shall not receive or retain anything under the Plan. | N/A | 0% |
| 4 | Equity Interests | Unimpaired. The Plan will not alter any of the legal, equitable and contractual rights of the Holders of the Equity Interests. On the Effective Date, the Equity Interests shall be retained by the existing | N/A | 100% |

Holders of the Equity Interests.

## III.
## OVERVIEW OF CHAPTER 11

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code. Under chapter 11, a debtor is authorized to reorganize its business for the benefit of interested parties including its creditors and equity interest holders. In addition to permitting rehabilitation of a debtor, another goal of chapter 11 is to promote equality of treatment for similarly situated creditors and equity interest holders with respect to the distribution of a debtor's assets.

The commencement of a chapter 11 case creates an estate that is comprised of all of the legal and equitable interests of the debtor as of the filing date. The Bankruptcy Code provides that the debtor may continue to operate its business and remain in possession of its property as a "debtor in possession." The consummation of a plan of reorganization is the principal objective of a chapter 11 reorganization case. A plan of reorganization sets forth the means for satisfying claims against and interests in the debtor. Confirmation of a plan by the bankruptcy court makes the plan binding upon a debtor, any issuer of securities under the plan, any person acquiring property under the plan and any creditor or equity interest holder of a debtor. Subject to certain limited exceptions, the confirmation order discharges a debtor from any debt that arose prior to the date of confirmation of the plan and substitutes therefor the obligations specified under the confirmed plan.

After a plan has been filed, the holders of claims against or interests in a debtor are generally permitted to vote to accept or reject the plan. Before soliciting acceptances of the proposed plan, however, section 1125 of the Bankruptcy Code requires a debtor to prepare a disclosure statement containing adequate information of a kind, and in sufficient detail, to enable a hypothetical reasonable investor to make an informed judgment about the plan. The Debtor is

submitting this Disclosure Statement to Holders of Claims against or Equity Interests in the Debtor to satisfy the requirements of section 1125 of the Bankruptcy Code.

# IV.
# DESCRIPTION OF THE DEBTOR'S BUSINESSES

### A.     Background

The Debtor is an Indiana limited liability company and, until February 2013, was the manager of MH Private Equity Fund, LLC ("Fund I"), a private equity fund partly owned by the Debtor. The other owner of Fund I is Merchants Capital, LLC ("Merchant Capital"), which is an entity ultimately owned and controlled by John Menard, the founder and president of Menards, Inc. ("Menard"), the home improvement chain.

Fund I and the Debtor were created via a partnership among Mr. Menard and the Debtor's two equity interest holders, Stephen and Tomisue Hilbert. Menard formed Merchant Capital as the vehicle through which he would invest in Fund I, and the Debtor, formed by and equally owned by the Hilberts, would have the sole and exclusive power to manage Fund I. The Debtor's management obligations were memorialized in that certain operating agreement originally dated August 31, 2005 (as amended, the "Operating Agreement").

Though partners for several years, the relationship between the Menard and the Hilberts soured. Thereafter, Merchant Capital and Menard have embarked on a litigation campaign against the Debtor and others that ultimately led to the Debtor's need to file this Chapter 11 Case.

On November 27, 2012, Merchant Capital and Menard commenced a proceeding in the Circuit Court Branch 2 of Eau Claire County for the State of Wisconsin by filing their complaint against defendants the Debtor, MH Equity Managing Member II, LLC, and Steven C. Hilbert as well as nominal defendants MH Private Equity Fund, LLC and MH Private Equity Fund II, LLC

styled *Merchant Capital LLC, et al. v. MH Equity Managing Member, LLC, et al.*, No. 12-CV-734 (the "Menard Litigation").

On May 28, 2013, Merchant Capital and Menard filed their amended complaint (the "Amended Complaint") in the Menard Litigation, adding plaintiffs New Sunshine LLC, Australian Gold, LLC, MH Investors Satellite, LLC, MH Investors United, LLC, and United Marketing Group, LLC as well as defendants James Adams, Rollin Dick, Ronald Gerwig, and Russell Mayerfeld.

In the nascent days of the Menard Litigation, the presiding court, without the benefit of an evidentiary hearing, entered a temporary injunction, which served, on an interlocutory basis, to remove the Debtor as manager of Fund I.

Fund I has submitted an answer in the Menard Litigation and, among other things, has asserted counterclaims against Merchant Capital and Menard for damages associated with its removal as manager of Fund I.

Since the filing of this Chapter 11 Case, the Menard Litigation has been removed to the United States District Court for the Western District of Wisconsin (the "Wisconsin District Court"). The Debtor has sought to have the action transferred to the United States District Court for the Southern District of Indiana and then referred to the Bankruptcy Court. Merchant Capital and Menard have opposed the transfer and have sought to have the Wisconsin Federal Court abstain and remand the action to back to the State Court. The Debtor has opposed that motion. The Wisconsin Federal Court has indicated that it will rule on the pending motions before the end of 2013.

## V.
## THE CHAPTER 11 CASE

Since its removal as the manager of Fund I, the Debtor has not operated and has been cut off from its source of revenue. The Debtor has no employees. Consequently, the Debtor has not filed the traditional motions that accompany a chapter 11 filing. Since the Petition Date, the Debtor has retained professionals and sought to have the Menard Litigation removed and transferred so that it can be contemporaneously resolved with the confirmation of the Plan.

*Retention of Professionals.*    The Debtor retained Katten Muchin Rosenman LLP ("Katten") and Frost Brown Todd, LLC ("Frost Brown") as its bankruptcy counsel. The Bankruptcy Court entered orders authorizing the retention of Katten on July 26, 2013 [Docket No. 24] and Frost Brown on August 2, 2013 [Docket No. 25]. On September 20, 2013, Merchant Capital and Menard sought to disqualify Katten. Katten and the Debtor are opposing that motion. The Bankruptcy Court has set a hearing for October 21, 2013, to resolve the disqualification issues.

*Disclosure Statement/Plan Confirmation Hearings.*    The Debtor will move the Bankruptcy Court for an order approving this Disclosure Statement as containing "adequate information" to enable a hypothetical, reasonable investor typical of the Holders of Claims and Equity Interests in classes eligible to vote on the Plan to make an informed judgment as to whether to accept or reject the Plan. A hearing to consider the adequacy of the Disclosure Statement is scheduled for _____, 2013. A hearing to consider confirmation of the Plan is scheduled for _____, 2013.

## VI.

### SUMMARY OF THE PLAN OF REORGANIZATION

#### A.    Introduction

The Debtor believes that confirmation of the Plan provides the best opportunity for maximizing recoveries for the Debtor's creditors and stakeholders. The Plan contemplates a successful outcome in the Menard Litigation and the payment in full of all Allowed Claims and the retention of the Equity Interests by the current Holders.

#### B.    Classification and Treatment of Administrative Expense Claims, Claims and Equity Interests Under the Plan

Only administrative expenses, claims and equity interests that are "allowed" may receive distributions under a chapter 11 plan. An "allowed" administrative expense, claim or equity interest simply means that a debtor agrees, or in the event of a dispute, that the court determines, that the administrative expense, claim or equity interest, including the amount, is in fact a valid obligation of, or interest in, a debtor. Section 502(a) of the Bankruptcy Code provides that a timely-filed administrative expense, claim or equity interest is automatically "allowed" unless a debtor or another party in interest objects.

The Bankruptcy Code also requires that, for purposes of treatment and voting, a chapter 11 plan divide the different claims against, and equity interests in a debtor, into separate classes based upon the legal rights and obligations attached to the claim or interest. Substantially similar claims are usually but not necessarily, classified together, as are equity interests of a substantially similar legal nature. Because an entity may hold multiple claims and/or equity interests which give rise to different legal rights, the holders of such claims and/or equity interests may find themselves members of multiple classes of claims and/or equity interests.

Under a chapter 11 plan, the separate classes of claims and equity interests must be designated either as "impaired" (altered by the plan in any way) or "unimpaired" (unaltered by the plan). If a class of claims is "impaired," the Bankruptcy Code affords certain rights to the holders of such claims, such as the right to vote on the plan (unless the plan provides for no distribution to the holder, in which case, the holder is deemed to reject the plan), and the right to receive an amount under the chapter 11 plan that is not less than the value that the holder would receive if the debtor were liquidated under chapter 7 of the Bankruptcy Code.

Under section 1124 of the Bankruptcy Code, a class of claims or interests is "impaired" unless, with respect to each claim or interest of such class, the plan (i) does not alter the legal, equitable and contractual rights of the holders of such claims or interests or; (ii) irrespective of the holder's right to receive accelerated payment of such claims or interests after the occurrence of a default, cures all defaults (other than those arising from, among other things, the debtor's insolvency or the commencement of a bankruptcy case), reinstates the maturity of the claims or interests in the class, compensates the holders of such claims or interests for any damages incurred as a result of their reasonable reliance upon any acceleration rights and does not otherwise alter their legal, equitable or contractual rights. Typically, this means that the holder of an unimpaired claim will receive on the later of the effective date of the plan of reorganization or the date on which amounts owing are due and payable, payment in full, in cash, with post-petition interest to the extent permitted and provided under the governing agreement between the parties (or, if there is no agreement, under applicable non-bankruptcy law), and the remainder of the debtor's obligations, if any, will be performed as they come due in accordance with their terms. Thus, other than its right to accelerate a debtor's obligations, the holder of an unimpaired

claim will be placed in the position it would have been in had the debtor's case not been commenced.

Consistent with these requirements, the Plan divides the Claims against, and Equity Interests in, the Debtor into the following Classes:

| Unclassified | Administrative Expense Claims | Paid in full |
|---|---|---|
| Unclassified | Priority Tax Claims | Paid in full |
| Class 1 | Priority Non-Tax Claims | Unimpaired |
| Class 2 | General Unsecured Claims | Unimpaired |
| Class 3 | Subordinated Claims | Deemed to Reject |
| Class 4 | Equity Interests | Unimpaired |

For purposes of computing Distributions under the Plan, Allowed Claims do not include post-petition interest unless otherwise specified in the Plan.

### 1. Unclassified—Administrative Expenses

Administrative Expense Claims are Claims constituting costs or expenses of administration of the Chapter 11 Case. Such Claims include any actual and necessary costs and expenses of preserving the Debtor's Estate, any indebtedness or obligations incurred or assumed by the Debtor in connection with the conduct of their business, all compensation and reimbursement of expenses to the extent Allowed by the Bankruptcy Court under the Bankruptcy Code and any fees or charges assessed against the Debtor's Estate owed to the office of the U.S. Trustee.

Pursuant to the Plan, to the extent not previously paid, all Administrative Expense Requests for Administrative Claims (other than with respect to Professional Fee Claims) accruing through the Effective Date and not otherwise paid in the ordinary course of business shall be Filed with the Bankruptcy Court by no later than [_____] (the "Administrative Expense

Bar Date"), and objections (if any) to such Administrative Expense Requests will be Filed no later than forty-two (42) days after the Administrative Expense Bar Date. Notwithstanding anything to the contrary in this Plan, only the Debtor shall have the right and standing to administer, object to, settle, compromise, and/or resolve Administrative Expense Requests. Any Holder of an Administrative Expense Claim (other than Professional Fee Claims) who fails to File a timely Administrative Expense Request that is required to be Filed on or before the Administrative Expense Bar Date:  (a) shall be forever barred, estopped and enjoined from asserting such Administrative Expense Claim against the Debtor or the Debtor's Estate (or filing a request for the allowance thereof), and the Debtor and the Debtor's Estate shall be forever discharged from any and all indebtedness or liability with respect to such Administrative Expense Claim; and (b) such Holder shall not be permitted to participate in any distribution under the Plan on account of such Administrative Expense Claim.

To the extent not previously paid, on the later to occur of (a) the Effective Date (or as soon as reasonably practicable thereafter) and (b) the date on which a Administrative Expense Claim shall become Allowed, the Debtor, in full and final satisfaction of such Administrative Expense Claim, will (i) pay to each Holder of an Allowed Administrative Expense Claim, in cash, the full amount of such Allowed Administrative Expense Claim, or (ii) satisfy and discharge such Allowed Administrative Expense Claim on such other terms and conditions as may be agreed between the Holder of such Allowed Administrative Expense Claim and the Debtor.

All Professional Fee Applications for Professional Fees through the Effective Date, for Allowance on a final basis, shall be Filed on or before the date that is thirty (30) days after the Effective Date.

To the extent not previously paid, Allowed Professional Fees will be paid by the Debtor in accordance with an order of the Bankruptcy Court allowing such Professional Fees.

## 2. Unclassified—Priority Tax Claims

Priority Tax Claims are Claims for taxes against the Debtor entitled to priority in payment pursuant to sections 502(i) or 507(a)(8) of the Bankruptcy Code. To the extent not previously paid, on the later to occur of (a) the Effective Date (or as soon as reasonably practicable thereafter) and (b) the date on which a Priority Tax Claim shall become Allowed, the Debtor, in full and final satisfaction of such Priority Tax Claim, will (i) pay to each Holder of an Allowed Priority Tax Claim, in cash, the full amount of such Allowed Priority Tax Claim, or (ii) satisfy and discharge such Allowed Priority Tax Claim on such other terms and conditions as may be agreed between the Holder of such Priority Tax Claim and the Debtor.

## 3. Unclassified-- Professional Fee Claims

Professionals are Persons employed pursuant to an order of the Bankruptcy Court in accordance with sections 327, 328, or 1103 of the Bankruptcy Code or otherwise and to be compensated for services rendered prior to the Effective Date pursuant to sections 327, 328, 329, 330, 331, 503 or 1103 of the Bankruptcy Code.

Pursuant to the Plan, all Professional Fee Applications for Professional Fees through the Effective Date, for Allowance on a final basis, shall be Filed on or before the date that is thirty (30) days after the Effective Date.

To the extent not previously paid, Allowed Professional Fees will be paid by the Debtor in accordance with an order of the Bankruptcy Court allowing such Professional Fees.

### 4.    Class 1—Priority Non-Tax Claims

Other Priority Claims consist of Claims against the Debtor entitled to priority in payment under section 507(a) of the Bankruptcy Code, other than an Administrative Expense Claim, Professional Fees or Priority Tax Claim.

Under the Plan, to the extent not previously paid, on the later to occur of (a) the Effective Date (or as soon as reasonably practicable thereafter) and (b) the date on which a Priority Non-Tax Claim shall become Allowed, the Debtor, in full and final satisfaction of such Priority Non-Tax Claim, will (i) pay to each Holder of an Allowed Priority Non-Tax Claim, in cash, the full amount of such Allowed Non-Priority Tax Claim, or (ii) satisfy and discharge such Allowed Non-Priority Tax Claim on such other terms and conditions as may be agreed between the Holder of such Allowed Priority Non-Tax Claim and the Debtor

### 5.    Class 2—General Unsecured Claim

On the later to occur of (a) the Effective Date (or as soon as reasonably practicable thereafter) and (b) the date on which a General Unsecured Claim shall become Allowed, the Debtor, in full and final satisfaction of such General Unsecured Claim, will (i) pay to each Holder of an Allowed General Unsecured Claim, in cash, the full amount of such Allowed General Unsecured Claim, or (ii) satisfy and discharge such Allowed General Unsecured Claim on such other terms and conditions as may be agreed between the Holder of such Allowed General Unsecured Claim and the Debtor.

### 6.    Class 3—Subordinated Claims

Subordinated Claims are the claims held by the Menard Parties. Under the Plan, on the Effective Date, the Subordinated Claims shall be disallowed and expunged in their entirety and with prejudice. Subordinated Claims shall not receive or retain anything under the Plan.

### 7.     Class 4—Equity Interests

Equity Interests consist of the legal, equitable, contractual or other rights of any Entity with respect to any capital stock, membership interest or other ownership interest in any of the Debtor, whether or not transferable, and any option, warrant or right to purchase, sell, subscribe for, or otherwise acquire or receive an ownership interest or other equity security in any of the Debtor.

The Plan will not alter any of the legal, equitable and contractual rights of the Holders of the Equity Interests. On the Effective Date, the Equity Interests shall be retained by the existing Holders of the Equity Interests.

### C.     Provisions for Implementation of the Plan

1.     **Resolve the Lawsuit**.  A condition to the confirmation of the Plan is the successful resolution of the Menard Litigation. The Debtor expects to be successful and obtain a substantial damages award, reinstatement as the manager of Fund I, or both. Upon the successful resolution of the Menard Litigation, the Debtor will restart its management operations, which will permit the Debtor to achieve sufficient cash flow to satisfy all Allowed Claims in full.

### D.     Executory Contracts and Unexpired Leases

Any executory contracts or unexpired leases that have not expired by their own terms on or prior to the Effective Date, (i) which the Debtor have not assumed and assigned or rejected with the approval of the Bankruptcy Court, or (ii) that are not the subject of a motion to assume the same pending as of the Effective Date, will be deemed rejected by the Debtor on the Effective Date, and the entry of the Confirmation Order by the Bankruptcy Court will constitute approval of such rejections pursuant to sections 365(a) and 1123 of the Bankruptcy Code, except to the extent that the Debtor identifies any executory contracts or unexpired leases on a list filed

100061377                                        15

with the Bankruptcy Court on or before ten (10) days before the Confirmation Hearing which the Debtor does not intend to reject.

If the rejection of an executory contract or unexpired lease results in damages to the other party or parties to such contract or lease, any Claim for such damages, if not heretofore evidenced by a Proof of Claim that has been timely Filed, shall be forever barred and shall not be enforceable against the Debtor or its properties, successors or assigns, unless a Proof of Claim therefore is timely Filed with the Bankruptcy Court and served upon the Debtor on or before (x) thirty (30) days after the later to occur of (i) notice of the Effective Date and (ii) the date of entry of an order by the Bankruptcy Court authorizing rejection of a particular executory contract or unexpired lease, or (y) such other date as may be ordered by the Bankruptcy Court.

## E.    Distributions Under the Plan

1.    On the Effective Date, or as soon as reasonably practicable thereafter, Holders of Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, and Allowed General Unsecured Claims shall be paid in full in cash in accordance with the Plan.

2.    **Time and Method of Distributions**. The Distributions shall be paid by the Debtor on the Effective Date of then Plan, or as soon as practicable thereafter. Subject to the provisions of Bankruptcy Rule 2002(g), and except as otherwise provided in the Plan, distributions and deliveries to Holders of record of Allowed Claims shall be made at the address of each such Holder set forth on the Debtor's books and records unless superseded by the address set forth on Proofs of Claim Filed by any such Holders. The Debtor shall be permitted, in its discretion, to withhold distributions to any Holder of an Allowed Claim until it shall have received a tax identification number and such other tax withholding forms as it may reasonably require to comply with applicable federal, state, or local laws.

3.      **Disputed Claims Reserve**. From and after the Effective Date, and until such time as all Disputed General Unsecured Claims have been compromised, settled or determined by Final Order, the Debtor shall establish and maintain a reserve account (the "Unsecured Claims Reserve") necessary to ensure that each Holder of a Disputed General Unsecured Claim shall receive payment of its Claim in accordance with the provisions of the Plan in the event such Claim is Allowed in the maximum amount claimed. Following the payment, satisfaction or resolution of all Disputed General Unsecured Claims, any amounts remaining in the Unsecured Claims Reserve shall be transferred to the Debtor, free and clear of all liens, claims, and encumbrances.

4.      **Undeliverable Distributions**. If any distribution to the Holder of an Allowed Claim under the Plan is returned as undeliverable, no further distributions shall be made to such Holder unless and until the issuer of the distribution is notified in writing of such Holder's then-current address. Any Holder ultimately receiving a distribution that was returned as undeliverable shall not be entitled to any interest or other accruals of any kind on such distribution. Nothing contained in the Plan shall require the Debtor to attempt to locate any Holder of an Allowed Claim. Any Holder of an Allowed Claim that does not assert its rights pursuant to the Plan to receive a distribution within ninety (90) days from and after the date such distribution is returned as undeliverable shall have such Claim for such undeliverable distribution discharged and, except for distributions to be made after the Holders provide their proper address, shall be forever barred from asserting any such Claim against the Debtor. In such case, any consideration held for distribution on account of such Claim shall belong to the Debtor, free and clear of al liens, claims, and encumbrances.

5.    **Time Bar to Payments**. Checks issued on account of Allowed Claims shall be null and void if not negotiated within ninety (90) days from and after the date of issuance thereof. Requests for reissuance of any check shall be made directly to the issuer of the check by the Holder of the Allowed Claim with respect to which such check originally was issued. Any request by a Holder of a Claim in respect of such a voided check shall be made within 180 days from and after the date of issuance of such voided check. After such date, all Claims in respect of voided checks shall be discharged and forever barred, and the Debtor shall be entitled to retain all monies related thereto free and clear of any and all claims.

6.    **Distributions After Effective Date**. Distributions made after the Effective Date to Holders of Claims that are not Allowed as of the Effective Date, but which later become Allowed, shall be deemed to have been made on the Effective Date.

7.    **Setoffs/Recoupment**. Except as stated in the last sentence of this subparagraph, notwithstanding anything contained herein to the contrary, the Debtor may, pursuant to sections 502(d) or 553 of the Bankruptcy Code or applicable nonbankruptcy law, setoff or exercise recoupment against any Allowed Claim or Allowed Administrative Expense and the distributions to be made pursuant to the Plan on account thereof (before any distribution is made on account of such Claim or Administrative Expense), on account of the claims, rights and Causes of Action of any nature related to the Claim or Administrative Expense that it may hold against the Holder of such Allowed Claim or Allowed Administrative Expense; provided, however, that neither the failure to effect such a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release of any such claims, rights and Causes of Action that the Debtor may possess against such Holder.

8. **Preservation of Subordination Rights**. Except as otherwise provided herein, all subordination rights and claims relating to the subordination by the Debtor of any Allowed Claim shall remain valid, enforceable and unimpaired in accordance with section 510 of the Bankruptcy Code or otherwise.

F. **Procedures for Resolution of Disputed, Contingent and Unliquidated Claims**

1. **Prosecution of Objections to Disputed Claims**. Upon the Effective Date, the Debtor shall (i) solely be responsible for pursuing any objection to the allowance of all Disputed Claims, and (ii) receive all rights of setoff and recoupment and other defenses that it may have with respect to any such Disputed Claim. Upon the Effective Date, the Debtor shall solely have the authority to file, settle, compromise, or withdraw any objections to any Disputed Claims, without Bankruptcy Court approval. Unless otherwise provided herein or ordered by the Bankruptcy Court, all objections to Disputed Claims shall be served and Filed not later than one-hundred-eighty (180) days after the Effective Date; provided, however, that this deadline may be extended upon motion by the Debtor, without notice to Holders of Disputed Claims.

2. **Estimation of Claims**. Upon and following the Effective Date, the Debtor may at any time request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtor previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. Subject to the provisions of section 502(j) of the Bankruptcy Code, in the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, the amount so estimated shall constitute the maximum allowed amount of such Claim. If the estimated amount constitutes a maximum limitation on the amount of such

Claim, the Debtor may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another.

      **3.**      **Payments and Distributions on Disputed Claims** Notwithstanding any provision hereof to the contrary, any issuer of a distribution hereunder may, in its discretion, pay the undisputed portion of a Disputed Claim.

      **G.**      **Conditions Precedent to Confirmation and Effective Date of the Plan**

      **1.**      **Conditions Precedent to Confirmation**. The following are conditions precedent to Confirmation of the Plan that must be satisfied or waived by the Debtor: (i) a Final Order finding that the Disclosure Statement contains adequate information pursuant to section 1125 of the Bankruptcy Code shall have been entered by the Bankruptcy Court; (ii) the entry of the Confirmation Order; and (iii) the resolution of the Menard Litigation, either by a Final Order on the merits or compromise approved by the Bankruptcy Court, resulting in the Debtor (a) returning as the manager of Fund I, and/or (b) being awarded damages on account of the claims it asserted therein.

      **2.**      **Conditions Precedent to Effective Date of Plan**. The following are conditions precedent to the Effective Date of the Plan that must be satisfied or waived by the Debtor: (i) confirmation shall have occurred and the Confirmation Order shall have been entered by the Bankruptcy Court; and (ii) the Confirmation Order shall have become a Final Order.

      **3.**      **Effect of Occurrence of Effective Date**. If the conditions listed in Article VII.A and B of the Plan are not satisfied or waived, this Plan shall be null and void in all respects and nothing contained in this Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any Claims by or against or any Equity Interests in the Debtor entities; (2)

      

prejudice in any manner the rights of the Debtor or any other party or (3) constitute an admission, acknowledgment, offer or undertaking by the Debtor.

**H.     Release, Exculpation, Injunctive and Related Provisions**

1.     *Plan Related Releases. Debtor and its current and/or post-Petition Date and pre-Effective Date affiliates, members, officers, directors, employees, or agents, and any of such parties' successors and assigns, shall not have or incur, and are hereby released from, any claim, obligation, cause of action, or liability to one another or to any Holder of any Claim or Interest, or any other party-in-interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of the Case, the negotiation and Filing of this Plan, the Filing of the Case, the settlement of Claims or rejection of executory contracts and leases, the pursuit of confirmation of this Plan, the consummation of this Plan, or the administration of this Plan or the property to be distributed under this Plan, except for their fraud, willful misconduct or gross negligence or any obligations that they have under or in connection with this Plan or the transactions contemplated in this Plan, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under this Plan.*

2.     *Injunction. Except as otherwise expressly provided in the Plan, all Holders of Claims and Equity Interests shall be permanently enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or Equity Interest against the Debtor and/or the Debtor's directors and officers, unless a previous order modifying the stay provided under section 362 of the Bankruptcy Code was entered by the Court; (ii) enforcing, attaching, collecting or recovering by any manner or means of any judgment, award, decree or order*

100061377                                21

*against the Debtor and/or the Debtor's officers and directors; and (iii) creating, perfecting, or enforcing any encumbrance of any kind against the property or interests in property of the Debtor, in each case in respect of any Claims or Equity Interests arising prior to the Petition Date; provided, however, that nothing herein shall release any entity from any claims, obligations, rights, causes of action or liabilities arising out of such entity's fraud, gross negligence or willful misconduct.*

3.    Exculpation.  *The Debtor and the Debtor's officers and directors shall neither have nor incur any liability to any Person or Entity (including any holder of a Claim or Equity Interest) for any prepetition or post-petition act taken or omitted to be taken in connection with or related to the formulation, negotiation, preparation, dissemination, implementation, administration, confirmation or occurrence of the Effective Date of the Plan, the disclosure statement or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan or any other prepetition or post-petition act taken or omitted to be taken in connection with, or in contemplation of, restructuring of the Debtor.  Notwithstanding the foregoing, such exculpations provided for in Article VIII of the Plan shall not extend to any damages, losses or claims arising from acts of fraud, gross negligence or willful misconduct.*

I.    **Retention and Preservation of Causes of Action**

1.    **Retention of Causes of Action**.  Except as otherwise provided in the Plan, all Causes of Action shall, on the Effective Date, automatically and irrevocably vest in the Debtor free and clear of liens, claims, encumbrances and interests.  The Debtor shall have the exclusive right, authority, and discretion to institute, commence, pursue, prosecute, abandon, settle, or compromise any and all such Causes of Action (under any theory of law, including,

without limitation, the Bankruptcy Code, and in any court or other tribunal) without the consent or approval of any third party and without any further order of the Bankruptcy Court.

           **2.**    **Preservation of Causes of Action**. Except as otherwise provided in the Plan, the Debtor reserves all rights to pursue any and all Causes of Action, and the Debtor hereby reserves the right to pursue, administer, settle, litigate, enforce and liquidate all Causes of Action consistent with the terms and conditions of the Plan. Except as otherwise provided in the Plan, the Debtor expressly reserves all Causes of Action for later adjudication, and, therefore, no preclusion doctrine or other rule of law, including, without limitation, any statute of limitations or the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to such Causes of Action upon, after or as a result of the Confirmation or Effective Date of the Plan, or the Confirmation Order.

## VII.
## CONFIRMATION PROCEDURE

Under the Bankruptcy Code, the following steps must be taken to confirm the Plan:

### A.    Solicitation of Votes

Because of the Plan's treatment of the Classes of Claims and Equity Interests, the Debtor is not required to solicit acceptances of the Plan.

### B.    The Confirmation Hearing

The Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a confirmation hearing. The Confirmation Hearing in respect of the Plan has been scheduled for _____, 2013, at [ ] prevailing Eastern time, before the Honorable James K. Coachys, at the United States Bankruptcy Judge, Birch Bayh Federal Building and United States Courthouse, 46 E. Ohio Street, Indianapolis, IN 46204. The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement of the adjourned

date made at the Confirmation Hearing. Any objection to Confirmation must be made in writing

and specify in detail the name and address of the objector, all grounds for the objection and the

amount of the Claim or number of shares of common stock of the Debtor held by the objector.

Any such objection must be Filed with the Bankruptcy Court and served so that it is received by

the Bankruptcy Court and the following parties on or before [ ], 2013 at 5:00 p.m. prevailing

Eastern time:

> Katten Muchin Rosenman LLP
> 525 W. Monroe Street, Suite 1900
> Chicago, IL 60661
> Attn.:  John P. Sieger

> -and-

> Frost Brown Todd, LLC
> 201 North Illinois Street, Suite 1900
> P.O. Box 44961
> Indianapolis, IN 46244-0961
> Attn:  Jeffrey A. Hokanson

> -and-

> Office of the United States Trustee
> 101 West Ohio Street, Suite 1000
> Indianapolis, IN 46204
> Attn:  Joseph F. McGonigal, Esq.

Objections to Confirmation of the Plan are governed by Bankruptcy Rule 9014 and orders of the

Bankruptcy Court.

## C.     Confirmation

At the Confirmation Hearing, the Bankruptcy Court will confirm the Plan only if all of

the requirements of section 1129 of the Bankruptcy Code are met. Among the requirements for

confirmation of the Plan are that the Plan is (i) accepted by all impaired Classes of Claims and

Equity Interests or, if rejected by an impaired Class, that the Plan "does not discriminate

unfairly" and is "fair and equitable" as to such Class, (ii) feasible and (iii) in the "best interests" of creditors and stockholders that are impaired under the Plan.

### 1. Feasibility

The Bankruptcy Code requires a plan proponent to demonstrate that confirmation of a plan of reorganization is not likely to be followed by the liquidation or the need for further financial reorganization of a debtor unless so provided by the plan of reorganization. Here, the Plan contemplates the successful resolution of the Menard Litigation, the restart of the Debtor's operations, and the payment in full of all Allowed Claims and Equity Interests.

### 2. Best Interests Test

With respect to each impaired Class of Claims and Equity Interests, confirmation of the Plan requires that each Holder of an Allowed Claim or Equity Interest either (i) accept the Plan or (ii) receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the value such Holder would receive or retain if the Debtor was liquidated under chapter 7 of the Bankruptcy Code. To determine what Holders of Claims and Equity Interests of each impaired Class would receive if the Debtor was liquidated under chapter 7, the Bankruptcy Court must determine the dollar amount that would be generated from the liquidation of the Debtor's assets and properties in the context of a chapter 7 liquidation case. Given the lack of operations, Creditors would receive no distributions on account of their Claims in a hypothetical chapter 7 involving the Debtor.

Moreover, the Debtor's costs of liquidation under chapter 7 would include the fees payable to a chapter 7 trustee, as well as those fees that might be payable to attorneys and other professionals that such a trustee might engage. Those claims and other claims that might arise in a liquidation case or result from the pending Chapter 11 Case, including any unpaid expenses incurred by the Debtor during the Chapter 11 Case such as compensation for attorneys, would be

paid in full from the liquidation proceeds before the balance of those proceeds would be made available to pay pre-petition Claims.

To determine if the Plan is in the best interests of each impaired Class, the present value of the distributions from the proceeds of a liquidation of the Debtor's assets and properties, after subtracting the amounts attributable to the foregoing Claims, are then compared with the value of the property offered to such Classes of Claims and Equity Interests under the Plan.

After considering the effects that a chapter 7 liquidation would have on the ultimate proceeds available for distribution to creditors in the Chapter 11 Case, including (i) the increased costs and expenses of a liquidation under chapter 7 arising from fees payable to a trustee in bankruptcy and professional advisors to such trustee, (ii) the lack of value of assets in a chapter 7 case, given that the Debtor would not be able to operate even if it prevailed in the Menard Litigation in a chapter 7 context, and (iii) the substantial increases in Claims which would be satisfied on a priority basis or on parity with creditors in the Chapter 11 Case, the Debtor has determined that confirmation of the Plan will provide each Holder of an Allowed Claim or Equity Interest with a recovery that is not less than such Holder would receive pursuant to liquidation of the Debtor under chapter 7. The Debtor also believes that the value of any distributions to each Class of Allowed Claims would be less than under the Plan because such distributions in a chapter 7 case would not occur for a substantial period of time.

A Liquidation Analysis prepared by the Debtor is attached hereto as Exhibit "B". The information set forth in Exhibit B provides a summary of the liquidation values of the Debtor's assets, assuming a chapter 7 liquidation in which a trustee appointed by the Bankruptcy Court would liquidate the assets of the Debtor's Estate.

Underlying the Liquidation Analysis are a number of estimates and assumptions that, although developed and considered reasonable by the Debtor, are inherently subject to significant economic and competitive uncertainties and contingencies beyond the control of the Debtor. The Liquidation Analysis is also based on assumptions with regard to liquidation decisions that are subject to change. Accordingly, the values reflected might not be realized if the Debtor were, in fact, to undergo such a liquidation.

As set forth in the Liquidation Analysis, no creditors would likely receive a distribution if the Debtor's assets were liquidated in a hypothetical chapter 7 case.

# VIII.
# ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

If the Plan is not confirmed and consummated, the alternatives to the Plan include (i) liquidation of the Debtor under chapter 7 of the Bankruptcy Code and (ii) an alternative plan of reorganization.

## A.   **Liquidation Under Chapter 7**

If no plan is confirmed, the Chapter 11 Case may be converted to a case under chapter 7 of the Bankruptcy Code, pursuant to which a trustee would be selected to liquidate the Debtor's assets for distribution in accordance with the priorities established by chapter 7.  As discussed above, the Debtor believes that liquidation under chapter 7 would result in smaller distributions being made to creditors than those provided for in the Plan because there would not be sufficient recoveries from liquidated assets to make any distributions to creditors.

## B.   **Alternative Plan of Reorganization**

If the Plan is not confirmed, the Debtor (or if the Debtor's exclusive period in which to file a plan of reorganization has expired, any other party in interest) could attempt to formulate a different plan.  Such a plan might involve either a reorganization and continuation of the

Debtor's business or an orderly liquidation of its assets. However, no party has expressed an interest in proposing an alternate plan of reorganization.

## IX.
## CERTAIN RISK FACTORS TO BE CONSIDERED

HOLDERS OF CLAIMS AGAINST THE DEBTOR AND EQUITY INTERESTS IN THE DEBTOR SHOULD READ AND CONSIDER CAREFULLY THE FACTORS SET FORTH BELOW AS WELL AS THE OTHER INFORMATION SET FORTH IN THIS DISCLOSURE STATEMENT (AND THE DOCUMENTS DELIVERED TOGETHER HEREWITH AND/OR INCORPORATED BY REFERENCE). THESE RISK FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS CONSTITUTING THE ONLY RISKS INVOLVED IN CONNECTION WITH THE PLAN AND ITS IMPLEMENTATION.

### A.    Certain Bankruptcy Law Considerations

#### 1.    Risk of Non-Confirmation of the Plan

Although the Debtor believes that the Plan will satisfy all requirements necessary for confirmation by the Bankruptcy Court, there can be no assurance that the Bankruptcy Court will reach the same conclusion. Moreover, there can be no assurance that modifications of the Plan will not be required for confirmation or that such modifications would not necessitate the re-solicitation of votes.

#### 2.    Risk of Non-Occurrence of the Effective Date

Although the Debtor believes that all of the conditions to the Effective Date will occur after the entry of the Confirmation Order, there can be no assurance as to the timing of the Effective Date or that such conditions will ever occur.

**B.**     **Certain Tax Matters**

For a summary of certain federal income tax consequences of the Plan to Holders of Claims and to the Debtor, see Article XI , "Certain U.S. Federal Income Tax Consequences Of The Plan."

**C.**     **Additional Factors to be Considered**

        **1.**     **The Debtor Have No Duty to Update**

The statements contained in this Disclosure Statement are made by the Debtor as of the date hereof, unless otherwise specified herein, and the delivery of this Disclosure Statement after that date does not imply that there has been no change in the information set forth herein since that date. The Debtor has no duty to update this Disclosure Statement unless otherwise ordered to do so by the Bankruptcy Court.

        **2.**     **No Representations Outside This Disclosure Settlement Are Authorized**

No representations concerning or related to the Debtor, the Chapter 11 Case, or the Plan are authorized by the Bankruptcy Court or the Bankruptcy Code, other than as set forth in this Disclosure Statement. Any representations or inducements made to secure your acceptance or rejection of the Plan other than as contained in, or included with, this Disclosure Statement should not be relied upon by you in arriving at your decision.

        **3.**     **No Legal or Tax Advice is Provided to You By This Disclosure Statement**

The contents of this Disclosure Statement should not be construed as legal, business or tax advice. Each Holder of a Claim or Equity Interest should consult his, her, or its own legal counsel and accountant as to legal, tax and other matters concerning his, her, or its Claim or Equity Interest.

This Disclosure Statement is not legal advice to you. This Disclosure Statement may not be relied upon for any purpose other than to determine how to vote on the Plan or object to confirmation of the Plan.

### 4.    No Admission Made

Prior to the approval of this Disclosure Statement, nothing contained herein shall constitute an admission of, or be deemed evidence of, the tax or other legal effects of the Plan on the Debtor or on Holders of Claims or Equity Interests; provided, however, that upon approval of the this Disclosure Statement, nothing contained herein shall constitute an admission in any proceeding other than the Chapter 11 Case.

## X.
## SECURITIES LAWS MATTERS

The Plan does not contemplate the issuance of any securities.

## XI.
## CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

The following discussion summarizes certain U.S. federal income tax consequences of the implementation of the Plan to the Debtor and Holders of certain Claims against the Debtor. This discussion does not address the U.S. federal income tax consequences of the implementation of the Plan to Holders of Claims that are entitled to reinstatement, unimpaired or otherwise entitled to payment in full in cash under the Plan.

The discussion of U.S. federal income tax consequences set forth below is based on the Internal Revenue Code of 1986, as amended (the "Tax Code"), U.S. Department of Treasury regulations promulgated or proposed thereunder, judicial authorities, published positions of the Internal Revenue Service ("IRS") and other applicable authorities, all as in effect on the date of this document and all of which are subject to change or differing interpretations (possibly with retroactive effect). The U.S. federal income tax consequences of the contemplated transactions

are complex and are subject to significant uncertainties. The Debtor has not requested a ruling from the IRS or any other tax authority, or an opinion of counsel, with respect to any of the tax aspects of the contemplated transactions, and the discussion below is not binding upon the IRS or such other authorities. Thus, no assurance can be given that the IRS or such other authorities would not assert, or that a court would not sustain, a different position from any discussed herein.

Except as specifically stated otherwise, this summary assumes that a Holder holds a Claim or an existing Equity Interest as a capital asset for U.S. federal income tax purposes. This summary does not address foreign, state or local tax consequences of the contemplated transactions, nor does it purport to address the U.S. federal income tax consequences of the transactions to special classes of taxpayers (e.g., foreign persons or entities, small business investment companies, regulated investment companies, real estate investment trusts, banks and certain other financial institutions, insurance companies, tax-exempt organizations, Holders that are, or hold Claims or existing Equity Interests through, pass-through entities, persons whose functional currency is not the U.S. dollar, dealers in securities or foreign currency, and persons holding Claims or existing Equity Interests as a hedge against, or that is hedged against, currency risk or as part of a straddle, constructive sale or conversion transaction).

The discussion does not address U.S. federal taxes other than income taxes, nor does it apply to any person that acquires any of the consideration issued pursuant to the Plan through means other than directly participating in the exchange. If a partnership (or another entity that is treated as a partnership for U.S. federal income tax purposes) holds Claims or existing Equity Interests, the tax treatment of a partner (or other equity owner) generally will depend upon the status of such partner (or other owner) and upon the activities of the partnership (or other entity).

This discussion is based on currently available information regarding the Plan terms and may not reflect the actual terms of the Plan upon its implementation. The following summary of certain U.S. federal income tax consequences is for informational purposes only and is not a substitute for careful tax planning and advice based upon the individual circumstances pertaining to a Holder of Claims or existing Equity Interests.

**IRS Circular 230 Notice**: To ensure compliance with IRS Circular 230, Holders of Claims and existing Equity Interests are hereby notified that: (A) any discussion of U.S. federal tax issues contained or referred to in this Disclosure Statement is not intended or written to be used, and cannot be used, by such Holders for the purpose of avoiding penalties that may be imposed on them under the Tax Code; (B) such discussion is written in connection with the promotion or marketing by the Debtor of the transactions or matters addressed herein; and (C) such Holders should seek advice based on their particular circumstances from independent tax advisors.

A. **Consequences to the Debtor**

The Plan, as currently contemplated, may result in U.S. federal income tax consequences to the Debtor. The Plan, as currently contemplated, may result in income tax consequences to the Debtor's Equity Interest Holder(s) in connection with the liquidation of the Debtor.

B. **Consequences to Claim Holders**

A Claim Holder that receives money or other property in discharge of a Claim for interest accrued during the period the Holder owned such Claim and not previously included in such Holder's income will be required to recognize ordinary income equal to the amount of such money and the fair market value of such property received in respect of such Claim. A Holder generally may claim an ordinary deduction (or, possibly, a write-off against a reserve for bad debts) to the extent of any Claim for accrued interest that was previously included in such

Holder's taxable income and which will not be paid in full by the Debtor under the Plan (after allocating any payment to be made by the Debtor between principal and accrued interest), even if the underlying Claim is held as a capital asset. The tax basis of any property received in exchange for a Claim for accrued interest under the Plan will equal the fair market value of such property on the Effective Date, and the holding period for such property will begin on the day following the Effective Date.

The extent to which consideration distributable under the Plan is allocable to interest is unknown. Holders of Claims are advised to consult their own tax advisers to determine the amount, if any, of consideration received under the Plan that is allocable to interest.

**THE FOREGOING SUMMARY HAS BEEN PROVIDED FOR INFORMATIONAL PURPOSES ONLY. ALL HOLDERS OF CLAIMS OR EXISTING EQUITY INTERESTS PARTICIPATING IN THE EXCHANGE UNDER THE PLAN ARE URGED TO CONSULT THEIR TAX ADVISORS CONCERNING THE FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES APPLICABLE TO THEM.**

## XII.

### RECOMMENDATION AND CONCLUSION

For all of the reasons set forth in the Disclosure Statement, the Debtor believes that confirmation and consummation of the Plan is preferable to all other alternatives.

Dated: October 10, 2013

MH EQUITY MANAGING MEMBER, LLC

_____/s/ Stephen C. Hilbert_____
By:     Stephen C. Hilbert
Title:  Chief Executive Officer